Opinion issued December 2, 2004










In The
Court of Appeals
For The
First District of Texas




NO. 01-02-01225-CR




KEVIN DREW MCRAE, Appellant

V.

THE STATE OF TEXAS, Appellee




On Appeal from County Criminal Court at Law No. 9
Harris County, Texas
Trial Court Cause No. 1141848




OPINION ON MOTION FOR REHEARING

          Appellant, Kevin Drew McRae, has challenged our opinion of July 1, 2004, by
filing a motion for rehearing, to which the State has filed its response. We grant
rehearing, withdraw our opinion of July 1, 2004, and issue this opinion in its stead. 
          Appellant pleaded not guilty to the misdemeanor offense of driving while
intoxicated (DWI) and pleaded true to a punishment-enhancement paragraph. After
a jury convicted appellant, the trial court found the enhancement paragraph true and
assessed punishment at 30 days’ confinement in jail. In three points of error,
appellant contends that the trial court erred by (1) admitting appellant’s “custodial”
oral statements, (2) refusing to give a “probable cause” jury instruction, and (3)
admitting evidence of improperly administered field-sobriety test results. We affirm.
Background
          A Houston Police Department (HPD) motorcycle-patrol officer saw appellant’s
vehicle run a red light and nearly cause a collision with four other vehicles. 
Appellant’s vehicle made a left turn without a turn signal at the intersection of
Richmond and Shepherd in southwest Houston and then continued on, taking up two
lanes of traffic. When the officer stopped the vehicle, he noticed that appellant, who
was driving, had bloodshot eyes, slurred speech, and a strong odor of an alcoholic
beverage on his breath. The officer administered the following three field-sobriety
tests to appellant: the Horizontal Gaze Nystagmus (HGN), the Rhomberg, and the
one-leg-stand. The HGN and one-leg-stand tests indicated that appellant was
impaired, but appellant performed normally on the Rhomberg test. After
administering the field-sobriety tests, the officer asked appellant where he had been. 
Appellant replied that he had been at a restaurant, where he shared a pitcher of beer
with some friends. The officer formed the opinion that appellant was intoxicated,
arrested him for DWI, and contacted dispatch for a patrol car to transport appellant
to the police station.
          At the police station, an HPD officer who was assigned to the accident division
as an accident investigator and intoxilyzer operator offered appellant the opportunity
to take an intoxilyzer test and to perform the field-sobriety tests on videotape. 
Appellant took the intoxilyzer test twice. The first result revealed that he had an
alcohol concentration above the legal limit at .106 grams of alcohol per 210 liters of
breath, and the second result indicated a .108 concentration. The videotape of
appellant shows that he declined to perform the one-leg-stand test because of a prior
leg injury, but performed three other field-sobriety tests. Although he performed
“okay” on the finger-to-nose test, he took longer than normal to estimate 30 seconds
on the Rhomberg test. On the walk-and-turn test, appellant missed stepping on the
line heel-to-toe twice and made an incorrect turn. From appellant’s performance on
these tests, the accident investigator concluded that appellant was impaired and had
lost the normal use of his physical faculties.
Expert Testimony Concerning Field-Sobriety Tests
          In his third point of error, appellant contends that the trial court committed
harmful, reversible error by permitting expert testimony that violated rule 702 of the
Rules of Evidence because the officer improperly administered the HGN test and the
one-leg-stand test.
          We review a trial court’s decision to admit or exclude evidence under an abuse-
of-discretion standard and will not reverse a trial court’s ruling unless it falls outside
the zone of reasonable disagreement. Torres v. State, 71 S.W.3d 758, 760 (Tex.
Crim. App. 2002). Rule 702 of the Rules of Evidence states that “if scientific,
technical, or other specialized knowledge will assist the trier of fact to understand the
evidence or to determine a fact in issue, a witness qualified as an expert by
knowledge, skill, experience, training, or education may testify thereto in the form of
an opinion or otherwise.” Tex. R. Evid. 702. Expert testimony regarding novel
scientific evidence must be reliable to be admissible under rule 702. Kelly v. State,
824 S.W.2d 568, 572 (Tex. Crim. App. 1992). To be considered reliable, evidence
based on a scientific theory must satisfy the following three criteria: (1) the
underlying scientific theory must be valid; (2) the technique applying the theory must
be valid; and (3) the technique must have been applied properly on the occasion in
question. Id.
HGN Test 
          Appellant contends that the trial court erred by allowing the arresting officer
to testify that appellant had six clues, the maximum number possible, on the HGN test
because, by the officer’s own admission, he administered the test to appellant
incorrectly. HGN evidence is reliable, admissible scientific evidence under rule 702
when performed by a police officer who is certified by the National Highway
Transportation Safety Administration (NHTSA)


 and who applies the technique
properly. Emerson v. State, 880 S.W.2d 759, 768 (Tex. Crim. App. 1994)
(concluding that HGN evidence met the criteria in Kelly, 824 S.W.3d at 572). The
HGN technique is applied properly when the officer follows the standardized
procedures outlined in the DWI Detection Manual published by NHTSA. See id. In
determining whether a person’s performance of the HGN test suggests intoxication,
an officer must look for the following clues in each eye: (1) the lack of smooth
pursuit, (2) distinct nystagmus at maximum deviation, and (3) the onset of nystagmus
prior to 45 degrees. Compton v. State, 120 S.W.3d 375, 377 (Tex. App.—Texarkana
2003, pet. ref’d) (citing Nat’l Highway Traffic Safety Admin., U.S. Dep’t of
Transp., DWI Detection and Standardized Field Sobriety Testing Student
Manual at VIII-6). Slight variations in the administration of the HGN test do not
render the evidence inadmissible or unreliable, but may affect the weight to give the
testimony. Compton, 120 S.W.3d at 378.
          The undisputed testimony establishes that the arresting officer did not
administer the HGN technique properly to appellant. Although the officer testified
that he administered all three parts of the HGN test to appellant, he admitted at
appellant’s Administrative License Revocation (ALR) hearing that he testified that
he had administered only two out of the three required parts of the HGN because he
did not conduct the onset-of- nystagmus portion of the test. The officer also admitted
making several other misstatements concerning the HGN test.


 When confronted
with the procedural errors made in administering the HGN test that did not comply
with the NHTSA guidelines, the officer was asked whether there was a “valid HGN
test” on appellant. The officer replied that there was none.
          Under these circumstances, which show that the officer acknowledged that the
HGN test administered to appellant was invalid, we cannot conclude that the HGN
technique was applied properly, as required by Emerson. See 880 S.W.2d at 768. 
Likewise we cannot conclude that the error was merely a slight variation in the
administration of the HGN test. See Compton, 120 S.W.3d at 378. We therefore
conclude that the trial court abused its discretion by allowing the officer to testify that
appellant had six clues on the HGN test because the technique applying the HGN was
improperly administered and resulted in an invalid test. See id.
Harm Analysis 
          We must disregard nonconstitutional error if, after examining the record as a
whole, we have fair assurance that the error did not influence the jury or had but a
slight effect. Solomon v. State, 49 S.W.3d 356, 365 (Tex. Crim. App. 2001); see Tex.
R. App. P. 44.2(b). In making this determination, the question is not simply whether
there was sufficient evidence to support the verdict. Bagheri v. State, 119 S.W.3d
755, 763 (Tex. Crim. App. 2003). Instead, the reviewing court should consider the
entire record, including testimony, physical evidence, jury instructions, the State’s
theories and any defensive theories, closing arguments, and voir dire, if applicable. 
Id. (citing Motilla v. State, 78 S.W.3d 352, 355-56 (Tex. Crim. App. 2002)). 
Important factors include the nature of evidence supporting the verdict, the character
of the alleged error, and how it might be considered in connection with other
evidence in the case. Bagheri, 119 S.W.3d at 763 (citing Motilla, 78 S.W.3d at 355). 
We should also consider whether the State emphasized the error, whether the
erroneously admitted evidence was cumulative, and whether it was elicited from an
expert. Id.; Motilla, 78 S.W.3d at 356. 
          The disputed issue in the trial concerned whether appellant was intoxicated: 
the wrongfully admitted HGN testimony was a piece of the State’s evidence
establishing appellant’s intoxication, albeit a minor part of the evidence. At trial,
appellant challenged the State’s assertion that he was intoxicated by pointing to
evidence that would suggest that he was not intoxicated, such as (1) his proper
performance of the finger-to-nose test at the police station, (2) his admission to
drinking only a part of a pitcher of beer, (3) his prior leg injury as an explanation for
his difficulties with the physical portions of the field-sobriety tests, (4) a witness who
testified that appellant did not look intoxicated on the videotape taken of appellant
at the police station, and (5) his proper performance of the Rhomberg field-sobriety
test taken before his arrest, although he later performed that test again at the police
station without similar success by estimating 30 seconds outside the normal range. 
          The State’s evidence on the issue of appellant’s intoxication shows that
appellant (1) drove recklessly by running a red light and nearly causing a collision of
several other vehicles, as well as committing other traffic violations; (2) smelled of
a strong odor of alcoholic beverage; (3) had bloodshot eyes; (4) slurred his speech;
(5) was slow in responding to the officer’s instructions; (6) performed poorly on the
walk-and-turn field-sobriety test administered at the police station; (7) admitted he
had been drinking alcohol; and (8) had an alcohol concentration of .106 grams of
alcohol per 210 liters of breath in his intoxilyzer sample. Additionally, the officer at
the police station who administered the field-sobriety tests on videotape testified that,
in his opinion, appellant had lost the normal use of his physical faculties. The HGN
evidence was cumulative of other evidence establishing intoxication and constituted
a very minor portion of the State’s evidence that appellant was intoxicated.  Although
the State maintained, in closing argument, that the first two prongs of the HGN test
were administered correctly, the prosecutor also stated, in closing argument, “[T]hey
(the defense) say that it (the third prong of the HGN test) wasn’t done properly. 
Maybe so,” and thus acknowledged appellant’s contention that the third portion of
the test was incorrectly administered. Additionally, although the HGN evidence was
conveyed by an alleged HGN expert, more persuasive scientific evidence quantified
and established appellant’s intoxication through the intoxilizer. See Motilla, 78
S.W.3d at 355. 
          Although the HGN evidence was conveyed by an alleged HGN expert, we have
fair assurance, after examining the record as a whole, that the evidence did not
influence the jury or had but a slight effect. See Solomon, 63 S.W.3d at 444. Given
the evidence in the record as a whole, we conclude that the HGN evidence had little
effect, if any, on the jury’s decision to convict appellant, see id., and that conviction
would have been certain without that erroneously admitted evidence. See Mosley v.
State, 983 S.W.2d 249, 259 (Tex. Crim. App. 1998). Because appellant’s substantial
rights were thus not affected, we conclude that error in admitting the HGN evidence
was harmless and must, therefore, be disregarded. See King v. State, 953 S.W.2d 266,
271 (Tex. Crim. App. 1997); Tex. R. App. P. 44.2 (b).
One-Leg Stand
          Appellant contends that the trial court erred by admitting evidence of the one-leg-stand test under rule 702 because the arresting officer improperly performed it
and therefore violated rule 702. Appellant contends that, under United States v.
Horn, 185 F. Supp. 2d 530 (D. Md. 2002), testimony concerning the one-leg-stand
test is admissible only if it meets the Kelly v. State criteria for expert testimony. See
Kelly, 824 S.W.2d at 573. 
          The Horn court held that the one-leg-stand test could constitute either lay
witness testimony or expert testimony, depending on how it was used at trial. See
Horn, 185 F. Supp. 2d at 556. Acknowledging that the probative value of the one-leg-stand derives from the basic nature of observing human behavior, the Horn court
concluded that the one-leg-stand test was lay witness testimony if the officer testified
only about her observations of a defendant’s “appearance, coordination, mood, ability
to follow instructions, balance, the presence of the smell of an alcoholic beverage .
. . and the observations of the defendant’s performance of the standardized field[-]
sobriety tests . . . .” Id. at 555-56. The court further concluded, however, that an
officer’s otherwise lay witness testimony can become expert testimony when, among
other circumstances, the officer uses terms like “standardized clues,” “test,” “pass,”
or “fail.” Id. 
          Texas, like Maryland, allows peace officers to testify as lay witnesses about
their observations of a suspect’s performance on the one-leg-stand test. Texas courts
have held that, because an officer’s testimony about a suspect’s coordination, balance,
and mental agility problems exhibited during the one-leg-stand test are observations
grounded in common knowledge, the officer’s testimony based on these observations
is governed by rule 701 (lay witness opinion testimony) and not rule 702 (testimony
by experts). Compare Tex. R. Evid. 701 with Tex. R. Evid. 702; see also Emerson,
880 S.W.2d at 763 (explaining that peace officer need not qualify as expert to express
opinion whether person he observed was intoxicated). The one-leg-stand test is
grounded in the common knowledge that excessive alcohol consumption can cause
problems with coordination, balance, and mental agility, and its sole purpose is to
reveal clues or symptoms of impairment. See Smith v. State, 65 S.W.3d 332, 347
(Tex. App.—Waco 2001, no pet.). Yet, it is also common knowledge that a variety
of physical and environmental conditions, having nothing to do with intoxication, can
also cause these symptoms. Id. 
          At least one Texas court has determined that one-leg-stand testimony can cross
from lay witness testimony into expert testimony. See id. (holding that officer
testifying that Smith had three out of four clues on one-leg-stand test and, therefore,
that there was 83 percent probability that Smith was intoxicated above the legal limit,
impermissibly gave one-leg-stand test “imprimatur” of scientific accuracy without
proof that officer’s “expert” testimony was reliable, as required by Emerson). Other
than prohibiting a statistical correlation between the one-leg-stand test and BAC,
however, Texas courts have not yet determined where the line should be drawn in
determining what constitutes lay versus expert testimony concerning the one-leg-stand test. 
          We conclude that the testimony by the arresting officer concerning the one-leg
stand, which follows, is lay witness testimony governed by rule 701. The officer told
the jurors that, during the one leg-stand, a defendant places one foot six inches above
the ground, whichever foot the defendant chooses, while the defendant stands with
hands down by his side, and counts from 1001 to 1030. The officer testified that the
test is a “divided attention” test that requires the defendant to do more than one thing
at the same time, specifically: standing up, holding his foot off the ground, and
counting, all while maintaining his balance. Four clues that an officer seeks during
the one-leg stand are swaying, using arms for balance, dropping a foot, and hopping. 
          During appellant’s performance of the one-leg stand, the officer saw him drop
his foot, use his arms for balance, sway, and fail to follow instructions by counting
one through eight using single digits instead of thousands. The officer concluded that
appellant was intoxicated because he could not follow directions. The officer
acknowledged that a person with a leg injury, like appellant, would have difficulty
performing the one-leg-stand test, but because the person can choose the leg on which
to stand and the leg to hold up, a person with an injured leg could nevertheless
perform the test successfully. 
          Appellant has not referred us to any Texas authority, and we are aware of none,
holding that, when an officer uses terms like “standardized clues,” “test,” or “divided
attention,” the officer is no longer testifying as a lay witness and begins to testify as
an expert, who must, therefore, be qualified. See Horn, 185 F. Supp. 2d at 555-56. 
We disagree with Horn to the extent that it holds that using these words automatically
changes lay testimony into expert testimony. We conclude that, under the
circumstances demonstrated here, the words “clues,” “test,” and “divided attention”
merely refer to observations by the peace officer, based on common knowledge
observations of the one-leg stand, and do not convert the lay witness testimony into
expert testimony. We hold that the officer’s testimony, as described above,
concerning his observations of appellant’s performance on the one-leg-stand test were
admissible under Rule 701. 
          As for the remainder of the officer’s testimony, in which he referred to the one-leg-stand test as a “recognized field sobriety test” “certified” by NHTSA, we assume
without deciding that rule 702 applies because the testimony concerns scientific,
technical, or specialized testimony beyond the observations of a lay witness. See
Tex. R. Evid. 702. Under the circumstances presented here, however, we conclude
that admitting the “expert” testimony was harmless. First, the officer admitted that
he did not follow the NHTSA guidelines accurately when he administered the one-leg-stand test because he stopped the test after appellant dropped his foot after six
seconds and did not administer the test for at least thirty seconds. Second, the officer
acknowledged that his errors in administering the one-leg-stand test meant that the
test was not valid according to the NHTSA guidelines. To the extent that the officer
informed the jurors that the one-leg-stand has technical or scientific accuracy because
it is certified by NHTSA, his testimony further established that he did not administer
the test correctly under their guidelines. Because the officer could not, therefore,
testify that appellant was intoxicated under the NHTSA guidelines, any error in
admitting evidence concerning the NHTSA certification of the one-leg-stand test is
harmless.
          We hold that any error in admitting testimony about NHTSA’s certification and
guidelines for the one-leg-stand test is harmless under the circumstances presented
here. These circumstances include the officer’s acknowledging that appellant’s test
was not administered according to the NHTSA guidelines and was, therefore, invalid. 
After excluding the testimony about NHTSA’s certification and guidelines for the
one-leg-stand test, we further hold that the jury was properly allowed to consider the
remainder of the one-leg-stand evidence as lay witness testimony of intoxication
based on appellant’s dropping his foot, using his arms for balance, swaying, and
failing to follow instructions. 
          We overrule appellant’s third point of error.
Article 38.23 Instruction
          In his second point of error, appellant contends that the trial court committed
reversible error by refusing to include an instruction on probable cause in the jury
charge, in accordance with article 38.23 of the Code of Criminal Procedure. Tex.
Code Crim. Proc. Ann. art. 38.23 (Vernon Supp. 2004-2005). Appellant contends
that the arresting office’s inconsistent testimony concerning how he administered the
field-sobriety tests and his improper administration of those tests required a jury
charge on whether probable cause existed for appellant’s arrest. The State contends
that there is no actual dispute about what occurred when the motorcycle-patrol officer
stopped appellant, and that the appropriateness of the arresting officer’s
administration of certain field-sobriety tests is a legal question for the court, not the
jury.
          Article 38.23 provides as follows:
(a)No evidence obtained by an officer or other person in violation of
any provisions of the Constitution or laws of the State of Texas, or of
the Constitution or laws of the United States of America, shall be
admitted in evidence against the accused on the trial of any criminal
case.
In any case where the legal evidence raises an issue hereunder, the jury
shall be instructed that if it believes, or has a reasonable doubt, that the
evidence was obtained in violation of the provisions of this Article, then
and in such event, the jury shall disregard any such evidence so
obtained.
 
Tex. Code Crim. Proc. Ann. art. 38.23. A fact issue about whether evidence was
legally obtained may be raised “from any source, and the evidence may be strong,
weak, contradicted, unimpeached, or unbelievable.” Garza v. State, 126 S.W.3d 79,
85 (Tex. Crim. App. 2004). The trial court must include an article 38.23 instruction
in the jury charge only if there is a factual dispute about how the evidence was
obtained. Id. The legality of the search or arrest is a question of law, not fact, when,
as here, essential facts concerning the search or arrest are not in dispute. Id. at 86.
          Only the arresting officer testified concerning the following: the reasons for
stopping appellant’s vehicle; appellant’s performance on the field-sobriety tests; and
the reasons why the officer concluded that appellant was intoxicated. In contending
that there is a fact issue requiring an article 38.23 instruction in the jury charge
because the arresting officer had made prior inconsistent statements and admittedly
performed some of the tests incorrectly, appellant mistakes an irrelevant factual
dispute for a material legal dispute. There was no dispute about the facts. The officer
admitted his inconsistent statements and that some of his field-sobriety tests were
administered incorrectly. The trial court was then required to apply the law to the
undisputed facts to make a legal conclusion about probable cause. No jury instruction
was required because there were no facts in dispute. We conclude that the trial court
did not err by refusing to include in the jury charge an article 38.23 instruction
concerning the legality of appellant’s arrest.
We overrule appellant’s second point of error.
“Custodial” Oral StatementsIn his first point of error, appellant contends that the trial court erred by
allowing the arresting officer to testify about appellant’s oral statements because the
officer did not read appellant his Miranda rights or comply with article 38.22 of the
Code of Criminal Procedure. See Tex. Code Crim. Proc. Ann. art. 38.22 (Vernon
Supp. 2004-2005); Miranda v. Arizona, 384 U.S. 436, 86 S. Ct. 1602 (1966). Article
38.22 governs the requirements that police must follow for oral custodial statements
that are to be admitted against an accused in criminal proceedings.
          A traffic stop does not constitute “custody” for Miranda purposes. State v.
Stevenson, 958 S.W.2d 824, 828 (Tex. Crim. App. 1997) (citing Berkemer v.
McCarty, 468 U.S. 420, 440, 104 S. Ct. 3138, 3150 (1984)). Subsequent events,
however, may cause a noncustodial encounter to escalate into custodial interrogation. 
Stevenson, 958 S.W.2d at 828; Dowthitt v. State, 931 S.W.2d 244, 254-55 (Tex. Crim.
App. 1996). The following four factors are relevant in determining whether a
noncustodial encounter has escalated into custody: (1) the existence of probable
cause to arrest, (2) the subjective intent of the police, (3) the focus of the
investigation, and (4) the subjective belief of the defendant. Stevenson, 958 S.W.2d
at 828; Dowthitt, 931 S.W.2d at 254. Factors two and four have become irrelevant
except to the extent that they may be manifested in the words or actions of law
enforcement officials; the custody determination is based entirely on objective
circumstances. Dowthitt, 931 S.W.2d at 254 (citing Stansbury v. California, 511 U.S.
318, 324-26, 114 S. Ct. 1526, 1530 (1994)).
          A DWI investigation that includes questioning and field-sobriety tests does not,
without more, rise to the level of a custodial interrogation. Stevenson, 958 S.W.2d
at 828-29 (citing Berkemer, 468 U.S. at 423, 104 S. Ct. at 3141-42). In Berkemer, the 
suspect was stopped and asked to perform a field-sobriety test. 468 U.S. at 423, 104
S. Ct. at 3141-42 After the suspect failed the test, the law enforcement officer asked
the suspect whether he had been using intoxicants. Id. The officer did not tell the
suspect that he was in custody until after he was arrested. Id. The Supreme Court
held that the suspect was not in custody for Miranda purposes until the formal arrest.
Id.
          The arresting officer’s conduct here was no more intrusive than in Berkemer. 
As in Berkemer, the stop began as a DWI investigation, and questioning occurred
after appellant failed the field-sobriety test. See id. Also as in Berkemer, the officer
had probable cause to arrest after appellant failed the field-sobriety test. See 486 U.S.
at 423, 104 S. Ct. at 3141-42l; Stevenson, 958 S.W.2d at 829 n. 7. The existence of
probable cause did not convert the investigation into a custodial situation. See
Berkemer, 486 U.S. at 423, 104 S. Ct. at 3141-42l; Stevenson, 958 S.W.2d at 829 n.
7. That appellant was the focus of a criminal investigation did not convert the
roadside stop into an arrest. See Berkemer, 468 U.S. at 423, 104 S. Ct. at 3141-42;
Stevenson, 958 S.W.2d at 829.
          Nothing in the record suggests that the arresting officer manifested any intent
to arrest appellant until after appellant admitted consuming the alcohol. See
Stevenson, 958 S.W.2d at 829. Although the arresting officer testified that he had
probable cause to arrest appellant and that appellant was under arrest after he
performed the one-leg-stand test, the officer did not convey those conclusions to
appellant. Only after appellant made his statements to the officer did the officer
advise appellant that he was under arrest and notify the dispatcher that he needed a
police unit to transport appellant. Under these circumstances, the subjective beliefs
of appellant and the arresting officer concerning whether appellant was in custody are
irrelevant. See id.
          Because appellant was not in custody when the arresting officer questioned
him, we conclude that appellant’s statements were admissible even though the officer
had not read appellant his Miranda rights. Furthermore, because article 38.22
pertains only to custodial statements and because appellant was not in custody when
he made the statements to the arresting officer, article 38.22 does not apply. See Tex.
Code Crim. Proc. Ann. art. 38.22.
          We overrule appellant’s first point of error.
 

Conclusion
          We affirm the judgment of the trial court.
 
 
                                                             Elsa Alcala
                                                             Justice
 
Panel consists of Chief Justice Radack and Justices Alcala and Bland.
Publish. Tex. R. App. P. 47.2(b).