The STATE of Texas,

v.

Steven Lyle STEVENSON, Appellee.

No. 1348–95.

Court of Criminal Appeals of Texas, En Banc.

Dec. 10, 1997.

Alex Gonzalez, Jr., Fort Worth, for appellant.

Danielle A. Le Gualt, Asst. Dist. Atty., Fort Worth, Matthew Paul, State's Atty., Austin, for the State.

*OPINION ON STATE'S PETITION FOR DISCRETIONARY REVIEW*

KELLER, Judge, delivered the opinion of the Court, in which McCORMICK, Presiding Judge, and MANSFIELD, PRICE, HOLLAND and WOMACK, Judges, joined.

On May 12, 1992, appellee and his wife were involved in a one car accident with a road sign. Officer Hilliard arrived on the scene shortly thereafter to conduct an accident investigation. Hilliard asked appellee who was driving the car. Appellee responded that his wife was driving. Hilliard then asked appellee's wife the same question, and her answer was the same. During subsequent investigation, Hilliard noticed that appellee's wife was injured in a way consistent with her being the passenger in the car. At that point, Hilliard reapproached appellee and again asked him who was driving, and appellee then admitted that he had indeed been driving. During the second confrontation Hilliard noticed that appellee smelled of alcohol. After appellee answered the officer's questions, Hilliard administered field sobriety tests, which appellee failed. After appellee failed the tests, he was arrested. At

no time before arrest was appellee given *Miranda* [1] warnings.

Appellee filed a motion to suppress, alleging (1) that his statements to the officer were privileged under Article 6701d § 47, Texas Revised Statutes [2] and (2) that appellee's right against selfincrimination was violated by the conjunction of the facts of the case with §§ 39, 40, and 45. The trial court granted the motion but later withdrew its ruling pending a live hearing. After the hearing, the trial court granted the motion and suppressed all statements made by appellee during Hilliard's investigation. The written order granting the motion contained no specific reason for doing so. In its oral comments, the trial court focused upon the privilege argument and stated: "So it gives a privilege and perhaps takes it away. Certainly a question that needs to be resolved in our jurisprudence. And to aid in that resolution, I will grant your motion to suppress."

The State appealed to the Court of Appeals. In its brief, the State argued that the privilege under § 47 did not apply to appellee's oral statements and that, in any event, the privilege expired after 180 days. The State also argued that appellee was not in custody for *Miranda* purposes.

In his brief to the Court of Appeals, appellee's main arguments focused upon §§ 39, 40, and 45 and their interaction with the investigation conducted in the case. He contended that the requirement in § 39 that the driver in an automobile accident remain at the scene amounted to custody. Relying upon *Lykins v. State,* 784 S.W.2d 32, 37 (Tex.Crim. App.1989), appellee also argued that §§ 40 and 45 required him, as driver of the car, to give information to the police in violation of his right against self-incrimination. Finally, appellee contended that the events of the

investigation required a finding that he was in custody in accordance with a four factor test. The four factors cited are:

(1) probable cause to arrest,

(2) subjective intent of police to hold suspect,

(3) subjective belief of a defendant as to the status of his freedom, and

(4) whether or not the focus of the investigation has finally centered on defendant.

Appellee argued that he became the focus of Officer Hilliard's investigation after the officer discovered appellee's wife's injuries. He further contended that the officer's subjective intent and appellee's subjective belief were that appellee could not leave. He also contended that his initial false report that his wife was driving the car gave the officer probable cause to arrest for giving a false report. Appellee concluded that he was in custody because all four factors of the four-factor test were met. He also contended that the factors, combined with §§ 39–45, mandated a finding of custody and a violation of *Miranda.*

The Court of Appeals affirmed but modified the trial court's ruling. The Court of Appeals held that appellee's initial statement that his wife was driving was not a product of custodial interrogation and should not have been suppressed. The court further found, however, that the focus of Hilliard's investigation changed after Hilliard discovered appellee's wife's injuries. The court found that the investigation shifted from a routine accident investigation to an adversarial driving while intoxicated (DWI) investigation and that appellee became the focus of the latter investigation. The Court of Appeals held that the trial court implicitly made this focus-

---

1. *See Miranda v. Arizona,* 384 U.S. 436, 86 S.Ct. 1602, 16 L.Ed.2d 694 (1966).

2. § 47(a) states that accident reports "shall be privileged and for confidential use" of various government agencies, and specifies various persons and agencies to whom a report may be released. § 47(c), however, provides that after 180 days accident reports become public records.

§§ 39, 40 and 45 provide that the driver of any vehicle involved in an accident resulting in inju-

ry, death, or property damage shall immediately stop at the scene of the accident and remain there until he has given his name, address, and the registration number of the vehicle he is driving, and shall render reasonable assistance to any injured person.

All references to sections are to the version of Article 6701d that was in effect at the time the offense was committed. Article 6701d was subsequently repealed and codified in Chapter 550 of the Texas Transportation Code.

shift finding and that such finding, combined with the effects of §§ 39, 40, and 45, supported a finding of custody. The Court of Appeals concluded that appellee's second oral statement, admitting that he was the driver, must be suppressed because appellee had not been given his *Miranda* warnings before making the statement.

The State filed a petition for discretionary review with this Court. In its brief, the State complains that the Court of Appeals erred by (1) holding that appellee was subject to custodial interrogation under *Miranda,* and (2) concluding that the trial court made implicit fact findings concerning the custody issue.[3]

We need not decide whether the Court of Appeals could properly imply fact findings concerning the custody issue because the Court of Appeals erred, as a legal matter, in analyzing the custodial interrogation issue. We will reverse.

## A. The Accident Statutes

■ We held in *Lykins* that, "[w]hen a direct penalty may be imposed for the failure to answer a question, a defendant need not invoke his privilege against self-incrimination and does not waive the privilege by merely answering a question put to him." *Id.* at 37. Under those circumstances, the self-incrimination privilege becomes self-executing, and any incriminating statements elicited are deemed involuntary and must be suppressed. *Id.* Appellee argued to the Court of Appeals that §§ 39–45 imposed, in his case, a direct penalty on the failure to answer questions by requiring drivers to reveal certain information after an accident or that the statutes at least rendered him "in custody" for *Miranda* purposes. We disagree.

■ If the language of a statute is unambiguous, we give effect to its plain meaning unless doing so would lead to absurd results. *Boykin v. State,* 818 S.W.2d 782, 785 (Tex.Crim.App.1991). As related to the present discussion, the statutes in question appear to be unambiguous. We initially note that § 39 applies only to accidents "resulting *only* in damage to a vehicle" (emphasis added). Because appellee's wife was injured during the accident, § 39 does not apply to the instant case. However, § 38 applies to accidents "resulting in injury to ... any person" and requires that the driver of a vehicle involved in the accident:

immediately stop such vehicle at the scene of such accident or as close thereto as possible but shall then forthwith return to and in every event shall remain at the scene of the accident until he has fulfilled the requirements of Section 40.

§ 38(a)(ellipse inserted). § 40 requires, among other things, that the driver "give his name, address, and registration number of the vehicle he is driving and the name of his motor vehicle liability insurer ... to the person struck or the driver or occupant of or person attending any vehicle colliding with [sic] ...." (ellipses added). § 38(b) provides penalties for failing to fulfill the requirements of §§ 38 and 40.

In the present case, the only persons involved in the accident were appellee and his wife. Presumably, appellee and his wife already have the information required by § 40.[4] Because § 38 merely requires a driver to remain at the scene long enough to impart the information required by § 40, those statutes did not require appellee to remain at the scene at all since all the injured parties already possessed the requisite information. Moreover, §§ 38 and 40 do not require a driver to give any information to law enforcement officials.

■ We do note that § 43 requires the driver involved in an accident "resulting in injury to ... any person" to "immediately by the quickest means of communication give notice of such accident" to relevant law enforcement authorities. § 43(a)(ellipse inserted). A violation of § 43 is a misdemeanor. *See* § 143(a). But § 43 does not require the

3. On the latter issue, the State argues that because the trial court's ruling relied explicitly and solely upon the privilege issue, the Court of Appeals was not justified in implying findings concerning custody.

4. Even if his wife did not possess some of the information, because she occupied the same vehicle as appellee, the required information could have been conveyed without stopping the vehicle.

driver to report his identity, and in the present case, Officer Hilliard became aware of the accident without knowing who drove the vehicle. Once Hilliard became aware of the accident, the notice requirement of § 43 was met, and appellee was not required to give the officer any further information.

■ As for § 45, its plain language merely specifies the forms in which written reports should be taken. *See* § 45(a). A portion of the statute requires that the written reports *"shall call for* sufficiently detailed information to disclose with reference to a traffic accident the cause, conditions then existing, and the persons and vehicle involved." *Id.* Given other language in the statute relating to the preparation and issuance of forms,[5] the plain meaning of this sentence is that the *report form* must call for the desired information, not that a person involved in the accident must give such information. Moreover, a driver involved in a traffic accident is only required to make a written report if that accident is *not* being investigated by a law enforcement officer. *See* § 44(a). Further, there is no requirement that a driver cooperate with an officer in making the officer's written report by giving oral statements about the accident.

■ Hence, appellee was not required under law to make any of the oral statements that he made to Officer Hilliard. Nor did the statutes require appellee to remain at the scene under the circumstances of this particular accident. Appellee was required to remain at the scene pursuant to an investigative stop conducted by Hilliard. But the statutes in question had no bearing upon appellee's duty to stop, and they imposed no duty to answer questions.[6] Under these circumstances, we hold that the Court of Appeals erred in finding that the accident statutes had any effect on the legality of appellee's oral statements.

### B. *Miranda*

■ The United States Supreme Court has held that a traffic stop does not constitute "custody" for *Miranda* purposes. *Berkemer v. McCarty,* 468 U.S. 420, 104 S.Ct. 3138, 82 L.Ed.2d 317 (1984). We have recognized though, that subsequent events may cause a noncustodial encounter to escalate into custodial interrogation. *Dowthitt v. State,* 931 S.W.2d 244, 254–55 (Tex.Crim. App., 1996). *Ussery v. State,* 651 S.W.2d 767, 770 (Tex.Crim.App.1983). *See also Berkemer,* 468 U.S. at 440, 104 S.Ct. at 3150. In determining whether a noncustodial encounter has so escalated, the four factors cited by

5. § 45(a) states in its entirety:

> The department shall prepare and upon request supply to police departments, coroners, garages, and other suitable agencies or individuals, forms for accident reports required hereunder, appropriate with respect to the persons required to make such reports and the purposes to be served. The written reports to be made by person involved in accidents and by investigating officers shall call for sufficiently detailed information to disclose with reference to a traffic accident the cause, conditions then existing, and the persons and vehicle involved. Also, the forms for the written reports shall include a means for designating and identifying peace officers, fire fighters, and emergency medical services employees who during an emergency are involved in accidents while driving law enforcement vehicles, fire department vehicles, or emergency medical services vehicles in pursuit of their duties. The forms shall also contain a statement by the peace officers, fire fighters, and emergency medical services employees describing the nature of the emergency. The forms must include a means of designating whether an individual involved

in an accident does or does not desire to be contacted by persons seeking to obtain professional employment as a professional described by Section 38.12(b)(1), Penal Code. An individual's response to whether the individual desires to be contacted is not admissible evidence in a civil trial.

6. A person may be charged with the misdemeanor offense of failure to identify if he refuses to give his name to a peace officer upon request after a legal arrest. Texas Penal Code § 38.02(a). That provision does not apply to the present case because appellee was not under arrest when the questions were asked. The operator of a vehicle may also be charged with a misdemeanor offense if he refuses to display his driver's license upon request by a peace officer. Texas Revised Statutes, Article 6687b § 13 (subsequently codified in the Texas Transportation Code § 521.025). Of course, the driver's license would contain a person's name and other identifying information. Merely giving such identifying information, however, does not in itself reveal a person's status as driver of a motor vehicle on a particular occasion.

appellee in his brief to the Court of Appeals are generally useful. *Dowthitt*, at 254–55. *Meek v. State*, 790 S.W.2d 618, 621–622 (Tex. Crim.App.1990). But those factors are relevant only to the extent that they are manifested to the suspect through the words and actions of law enforcement officials; "the custody determination is based entirely upon objective circumstances." *Dowthitt*, at 254–55. *See also Stansbury v. California*, 511 U.S. 318, 324–26, 114 S.Ct. 1526, 1530, 128 L.Ed.2d 293, 300 (1994). *Berkemer*, 468 U.S. at 442, 104 S.Ct. at 3151–52.

▮▮▮▮▮ In essence, the Court of Appeals found that the roadside encounter in the present case escalated into custody after Hilliard discovered that appellee's wife's injuries were consistent with her being the passenger rather than the driver. The Court of Appeals came to this conclusion by holding that the trial court implicitly found a focus-shift in the investigation. However, even if appellee had become the focus of a DWI investigation, that fact alone would not give rise to custody. In *Berkemer*, the suspect was stopped and asked to perform a field sobriety test. 468 U.S. at 423, 104 S.Ct. at 3141–42. After the suspect failed the sobriety test, the law enforcement officer asked the suspect whether he had been using intoxicants. *Id.* The officer never told the suspect that he was in custody until he was formally arrested. *Id.* The Supreme Court held that the suspect was not in custody for *Miranda* purposes until the formal arrest. *Id.* at 441–442, 104 S.Ct. at 3151–52. Obviously, the mere fact that the suspect becomes the focus of a criminal investigation does not convert a roadside stop into an arrest.

The record shows that the investigation in the present case, after the so-called shift in focus, was no more intrusive than the fact situation in *Berkemer*. The *Berkemer* stop began as a DWI investigation, and questioning occurred after the suspect failed the sobriety test. In the present case, the accident investigation *may* have become a DWI investigation after the officer discovered a reason to doubt the veracity of appellee's claim that his wife drove the car. At most, the accident investigation may have escalated from a consensual encounter to an investigative detention. But, mere focus upon the defendant did not convert the investigation into an arrest.[7]

The judgment of the Court of Appeals is reversed, and the case is remanded for proceedings consistent with this opinion.

MEYERS, J., not participating.

BAIRD, Judge, dissenting.

Camouflaged by elliptic analysis and deliberate obscurity, the majority's opinion in this case is nothing more than an attempt to sidestep our most recent precedent, namely, *Guzman v. State*, 955 S.W.2d 85 (Tex.Cr. App. 1997). In *Guzman* this Court held *"we should afford almost total deference to a trial court's determination of the historical facts that the record supports especially when the trial court's fact findings are based on an evaluation of credibility and demeanor."*[1] *Guzman*, 955 S.W.2d at 87. When applied to this case, *Guzman* stands in the

---

7. In his brief to the Court of Appeals, appellee argued that he was in custody because probable cause existed to arrest him after Officer Hilliard discovered evidence inconsistent with appellee's statement that his wife drove the car. Even if true, the *existence of probable cause to arrest* does not distinguish the present fact situation from *Berkemer;* the officer in *Berkemer* possessed probable cause to arrest after the suspect failed the sobriety test. While we have found the manifestation of probable cause to arrest to trigger custody in certain unusual situations, those conditions do not appear in the present case. *see Dowthitt*, at 255–57 (probable cause triggered custody after extremely long interrogation, where police accompanied the suspect on restroom breaks and ignored his requests to see his wife).

Appellee also claimed to the Court of Appeals that he and the officer both subjectively believed that appellee was in custody when he admitted to being the driver of the car. These contentions are belied by the record. Officer Hilliard testified that appellee was not in custody until after he failed the sobriety tests, and no evidence of appellee's subjective perceptions is contained in the record. In any event, the subjective beliefs of appellee and Hilliard are irrelevant. There is no evidence in the record that Hilliard manifested to appellee any intent to arrest until appellee was formally arrested. The officer merely asked questions during a continuing investigation and administered sobriety tests. These acts are not sufficient to establish custody under *Miranda*.

1. All emphasis added unless otherwise indicated.

way of the majority's agenda of constructing results favorable to the State. Because the majority fails to apply the controlling precedent in this case without any thoughtful or comprehensible analysis for its position, I dissent.

## I.

Pursuant to Tex.Rev.Civ. Stat. Ann. art. 6701d, §§ 39–47, appellee moved to suppress any statements that he made to the police during their investigation of the instant accident. The trial judge granted appellee's motion to suppress. Not only is the trial judge the sole trier of fact in a motion to suppress hearing, the trial court is the judge of the credibility of the witnesses as well as the weight to be given their testimony. *Guzman*, 955 S.W.2d at 87, 89. If findings of fact or conclusions of law are not filed, *we presume that the trial court made the findings necessary to support its ruling so long as those implied findings are supported by the record.* *Guzman*, 955 S.W.2d at 88–89. As the trial judge did not file findings of fact or conclusions of law, but rather made his ruling orally, the instant "findings of fact" in this case are necessarily "implied."

The record clearly supports the trial judge's decision to premise his ruling upon a finding that, pursuant to art. 6701(d), the information appellee provided the police regarding this accident was privileged. Article 6701d, §§ 39, 40, 45 and 47 combined to subject appellee to criminal liability if appellee did not remain at the scene of the accident and provide information to the police officers investigating the accident. However, as appellee provided information about the accident, pursuant to art. 6701d, the police were in a position to gain incriminating information for their DWI investigation. Appellee was not given *Miranda*[2] warnings prior to being arrested for DWI. The police officer in charge of the investigation admitted that the accident investigation and the DWI investigation were "intertwined" to the extent that when the DWI investigation began, the accident investigation was still in progress.

## II.

The trial court's ruling is based on a determination of the historical facts clearly supported by the record, and based on an evaluation of credibility and demeanor. Therefore, the majority has an obligation to defer to the findings of the trial court in accordance with this Court's opinion in *Guzman, supra*. Additionally, the majority opinion offends public policy by encouraging individuals *not* to cooperate with authorities in accident situations by pitting such cooperation against the exercise of one's right against self-incrimination.

Because the majority ignores precedent from this Court and requires individuals to make a Hobson's choice between the exercise of their Fifth Amendment right and being prosecuted for a misdemeanor offense, I dissent.

OVERSTREET, J., joins this opinion.

2. *Miranda v. Arizona*, 384 U.S. 436, 86 S.Ct. 1602, 16 L.Ed.2d 694 (1966).