TEXAS COURT OF APPEALS, THIRD DISTRICT, AT AUSTIN






NO. 03-99-00053-CR






The State of Texas, Appellant



v.



Dusty Waldrop, Appellee







FROM THE COUNTY COURT AT LAW NO. 7 OF TRAVIS COUNTY


NO. 510,039, HONORABLE BRENDA KENNEDY, JUDGE PRESIDING







 The State appeals the suppression of statements by Dusty Waldrop relating to his
arrest for the offense of driving while intoxicated (DWI). See Tex. Penal Code Ann. § 49.04
(West 1994). At pre-trial conference, the trial court ordered the suppression of Waldrop's
statements regarding where he had been, how much he had been drinking, and whether he was
drunk. The State argues Waldrop's statements were made voluntarily and should have been
admitted. We agree and will reverse the suppression order. 


BACKGROUND


 On August 8, 1998, Austin Police Department Detective Paul Johnson stopped
Waldrop sometime after midnight for driving the wrong way down a one-way street. Detective
Johnson asked Waldrop to walk to the back of his truck. The detective testified that Waldrop
swayed slightly while standing behind his truck and that he asked Waldrop whether he had been
drinking. Waldrop responded that he had consumed a couple beers. Detective Johnson testified that
Waldrop told him he had been at Antone's, a local blues club. Waldrop implored, "Just let me get
a ride home, I'll quit driving." Waldrop then volunteered that he knew he was drunk. On cross-examination, Detective Johnson was unable to remember the exact questions he asked Waldrop. He
also was unable to recall which one of Waldrop's statements came first and whether Waldrop's
admission that he was drunk was in response to a question.

 Waldrop was not given Miranda warnings before his conversation with Johnson. He
also was not under arrest or handcuffed. After listening to Waldrop's statements, Johnson called
Officer Janet Stephenson and Officer Terrell Johnson to administer field sobriety tests. In response
to Detective Johnson's call, Officer Johnson arrived at 1:40 a.m. and testified that Waldrop's speech
was slurred and he swayed while standing. Officer Johnson then arrested Waldrop after
administering field sobriety tests and Miranda warnings. 

 Waldrop filed a pre-trial motion to suppress evidence relating to his arrest. 
Although the motion did not expressly seek the suppression of his statements to Detective Johnson
on Miranda grounds, this issue was raised at the hearing on the motion. The trial judge suppressed
three types of statements: what alcohol Waldrop had consumed, where he had been, and his
admission that he was drunk. The statements were suppressed because Detective Johnson did not
first provide Miranda warnings to protect Waldrop's privilege against self-incrimination. 


DISCUSSION


 The only issue before us is whether a roadside stop sufficiently places a driver in
custody to require the Miranda warnings necessary to protect an individual's Fifth Amendment
privilege against self-incrimination. We begin by reviewing the Miranda decision to specify the
dangers that concerned the Supreme Court. The opinion traced the history of the privilege against
self-incrimination and stressed that the privilege underlies the respect for individual rights upon
which our criminal justice system is based. See Miranda v. Arizona, 384 U.S. 436, 460 (1966). 
The Court warned that


without proper safeguards the process of incustody interrogation of persons
suspected or accused of crime contains inherent pressures which work to
undermine the individual's will to resist and compel him to speak where he would
not otherwise do so freely. 



Id. at 467. This description of "inherent pressures" and compelled testimony shows that the
Miranda court's primary concern was that suspects may be coerced into making self-incriminating
statements.

 Miranda also provides guidance on what evidence is admissible at trial. Statements
given freely and voluntarily are admissible in evidence. See id. at 478. In distinguishing
situations which require safeguards to protect the privilege against self-incrimination from those
that do not, the opinion pointed to isolation and intimidation as key aspects of an interrogation that
undermines an individual's ability to speak voluntarily. See id. at 448-55. The Supreme Court
concluded that protections against self-incrimination "must be given when the individual is first
subjected to police interrogation while in custody at the station or otherwise deprived of his
freedom of action in any significant way." See id. at 477.

 Article 38.22 of the Code of Criminal Procedure codifies both Miranda's system
of protecting a suspect against self-incrimination and its distinction between voluntary statements
and compelled confessions. See Tex. Code Crim. Proc. Ann. art. 38.22 (West 1979 & Supp.
1999); Stahle v. State, 970 S.W.2d 682, 690 (Tex. App.--Dallas 1998, pet. ref'd). Under Miranda
and article 38.22, Waldrop's privilege against self-incrimination required protection if he was in
custody or deprived of his freedom of action in any significant way. See Miranda, 384 U.S. at
477; Tex. Code Crim. Proc. Ann. art. 38.22.


Standard of Review

 In reviewing motions to suppress, appellate courts should afford almost total
deference to trial courts' rulings on "mixed questions of law and fact" if the resolution of those
ultimate questions turns on an evaluation of credibility and demeanor. See Guzman v. State, 955
S.W.2d 85, 89 (Tex. Crim. App. 1997). Appellate courts may review de novo "mixed questions
of law and fact" not falling within this category. See id. Here the admissibility of the statements
does not turn on the credibility of the witnesses, but on the application of the Miranda doctrine. 
The trial judge found the witnesses credible yet held that the statements were inadmissible. 
Consequently, the decision to suppress need not be afforded total deference under Guzman, and
we will review the application of the law de novo. 


Custodial Interrogation

 Waldrop's statements that he had had a few beers, that he had been at Antone's,
and that he knew he was drunk tend to incriminate him for DWI. The Supreme Court interpreted
Miranda in the context of self-incriminating statements at a roadside traffic stop in Berkemer v.
McCarty, 468 U.S. 422, 422-23 (1984). To assess the admissibility of self-incriminating
statements elicited from a motorist during a routine traffic stop, courts are obliged to consider
whether the questioning can be considered a "custodial interrogation." See id. at 435. Because
Waldrop's self-incriminating statements were made after Detective Johnson stopped him for a
routine traffic violation, Berkemer controls our analysis.

 If statements are not made as the result of custodial interrogation, the requirements
of Miranda and of article 38.22 do not apply. See Holland v. State, 770 S.W.2d 56, 58 (Tex.
App.--Austin 1989), aff'd, 802 S.W.2d 696 (Tex. Crim. App. 1991). A non-custodial, voluntary,
oral statement is admissible at trial. See Kelley v. State, 817 S.W.2d 168, 173 (Tex. App.--Austin
1991, writ ref'd). Under Kelley, if Waldrop's statements were not the result of custodial
interrogation, they are admissible.

 Custodial interrogation is "questioning initiated by law enforcement officers after
a person has been taken into custody or otherwise deprived of freedom of action in any significant
way." Miranda, 384 U.S. at 444. In Berkemer, the Supreme Court considered facts quite similar
to ours and held that the driver's statements were admissible and not the result of a custodial
interrogation. After an officer stopped a vehicle for weaving in and out of its lane, the motorist
could not complete a sobriety test. See Berkemer, 468 U.S. at 423. The driver then told the
officer that he had drunk two beers and smoked marihuana. See id. The court admitted both
statements, holding that "persons temporarily detained pursuant to such stops are not 'in custody'
for the purposes of Miranda." See id. at 440. Two factors were determinative: the temporary
and brief nature of such stops and the absence of a "police dominated" atmosphere. See id. at
437-39. These factors stand in direct opposition to the isolation and intimidation that concerned
the court in Miranda. See Miranda, 384 U.S. at 477.

 Following the holding in Berkemer, we conclude that Waldrop's statements should
not have been excluded by the court below. Detective Johnson's actions detaining Waldrop were
temporary like the acts of the officer in Berkemer. Johnson requested that Waldrop walk to the
back of his truck and asked whether he had been drinking. In Berkemer the defendant was held
not to be in custody when he volunteered certain statements after performing a field sobriety test. 
See Berkemer, 468 U.S. at 442. Here, no field sobriety tests had even been ordered at this point. 
As in Berkemer, Detective Johnson detained Waldrop along a public street and not in a police
dominated atmosphere. The holding of Berkemer that the motorist was not in custody under such
factually similar circumstances persuades us that the trial court erred in suppressing the statements
at issue here.

 Texas cases solidify our conclusion that the trial court erred in excluding Waldrop's
statements. On similar facts, the Court of Criminal Appeals held in State v. Stevenson that
statements volunteered at a roadside investigation for DWI are admissible into evidence. See 958
S.W.2d 824, 829 (Tex. Crim. App. 1997). The defendant claimed his wife was driving when the
couple was involved in a one-car accident with a road sign. See id. at 825. The investigating
officer discovered that Stevenson's wife was injured in a manner consistent with her being the
passenger and became suspicious that Stevenson had been driving. See id. The court held that
the officer's change of focus from investigating the accident to investigating a possible DWI did
not subject the defendant to a custodial interrogation. See id. at 829; accord State v. Hutto, 977
S.W.2d 855, 858 (Tex. App.--Houston [14th Dist.] 1998, no pet.) (field sobriety testing and
questioning did not convert roadside stop into an arrest). Applying Stevenson, we hold that
Waldrop's statements were not the result of a custodial interrogation and are therefore admissible
even in the absence of a Miranda warning. See Stevenson, 958 S.W.2d at 829.


CONCLUSION


 We conclude that Waldrop's statements were made voluntarily to Detective Johnson
when Waldrop was not under custodial interrogation. The trial court erred by failing to follow
the law announced in Berkemer and Stevenson. We reverse the order suppressing Waldrop's
statements and remand the cause to the trial court for further proceedings.



 

 Bea Ann Smith, Justice

Before Chief Justice Aboussie, Justices B. A. Smith and Yeakel

Reversed and Remanded

Filed: December 9, 1999

Publish



"font-family: CG Times Regular"> Custodial interrogation is "questioning initiated by law enforcement officers after
a person has been taken into custody or otherwise deprived of freedom of action in any significant
way." Miranda, 384 U.S. at 444. In Berkemer, the Supreme Court considered facts quite similar
to ours and held that the driver's statements were admissible and not the result of a custodial
interrogation. After an officer stopped a vehicle for weaving in and out of its lane, the motorist
could not complete a sobriety test. See Berkemer, 468 U.S. at 423. The driver then told the
officer that he had drunk two beers and smoked marihuana. See id. The court admitted both
statements, holding that "persons temporarily detained pursuant to such stops are not 'in custody'
for the purposes of Miranda." See id. at 440. Two factors were determinative: the temporary
and brief nature of such stops and the absence of a "police dominated" atmosphere. See id. at
437-39. These factors stand in direct opposition to the isolation and intimidation that concerned
the court in Miranda. See Miranda, 384 U.S. at 477.

 Following the holding in Berkemer, we conclude that Waldrop's statements should
not have been excluded by the court below. Detective Johnson's actions detaining Waldrop were
temporary like the acts of the officer in Berkemer. Johnson requested that Waldrop walk to the
back of his truck and asked whether he had been drinking. In Berkemer the defendant was held
not to be in custody when he volunteered certain statements after performing a field sobriety test. 
See Berkemer, 468 U.S. at 442. Here, no field sobriety tests had even been ordered at this point. 
As in Berkemer, Detective Johnson detained Waldrop along a public street and not in a police
dominated atmosphere. The holding of Berkemer that the motorist was not in custody under such
factually similar circumstances persuades us that the trial court erred in suppressing the statements
at issue here.

 Texas cases solidify our conclusion that the trial court erred in excluding Waldrop's
statements. On similar facts, the Court of Criminal Appeals held in State v. Stevenson that
statements volunteered at a roadside investigation for DWI are admissible into evidence. See 958
S.W.2d 824, 829 (Tex. Crim. App. 1997). The defendant claimed his wife was driving when the
couple was involved in a one-car accident with a road sign. See id. at 825. The investigating
officer discovered that Stevenson's wife was injured in a manner consistent with her being the
passenger and became suspicious that Stevenson had been driving. See id. The court held that
the officer's change of focus from investigating the accident to investigating a possible DWI did
not subject the defendant to a custodial interrogation. See id. at 829; accord State v. Hutto, 977
S.W.2d 855, 858 (Tex. App.--Houston [14th Dist.] 1998, no pet.) (field sobriety testing and
questioning did not convert roadside stop into an arrest). Applying Stevenson, we hold that
Waldrop's statements were not the result of a custodial interrogation and are therefore admissible
even in the absence of a Miranda warning. See Stevenson, 958 S.W.2d at 829.


CONCLUSION


 We conclude that Waldrop's statements were made voluntarily to Detective Johnson
when Waldrop was not under custodial interrogation. The trial court erred by failing to follow
the law announced in Berkemer and Stevenson. We reverse the order suppressing Waldrop's
statements and remand the cause to the trial court for further proceedings.