# TEXAS COURT OF APPEALS, THIRD DISTRICT, AT AUSTIN

**NO. 03-04-00483-CV**

**In the Matter of R. A.**

**FROM THE DISTRICT COURT OF TRAVIS COUNTY, 98TH JUDICIAL DISTRICT
NO. J-24,442, HONORABLE W. JEANNE MEURER, JUDGE PRESIDING**

## M E M O R A N D U M   O P I N I O N

R.A., a juvenile, was adjudicated delinquent following his plea of true to possession of a controlled substance. Tex. Health & Safety Code Ann. § 481.117 (West 2003). He appeals from the order of a juvenile court referee on his motion to suppress physical evidence obtained during a traffic stop. The referee suppressed a container with marihuana residue inside, but ruled that another container with prescription Xanax pills was admissible. We affirm.

### Statement of Facts

Shortly after midnight on March 25, 2004, Austin Police Officer Shawn Rougeou pulled over a Cadillac after witnessing traffic violations. As soon as Rougeou got out of his patrol car to approach the Cadillac, he smelled a strong odor of marihuana. He asked the driver, R.A., for his driver's license and proof of insurance, which R.A. did not provide. Rougeou then told R.A. and his two passengers that he smelled marihuana, and that "if [R.A.] had any mari[h]uana that [Rougeou] could be lenient and issue a citation."

R.A. then reached into the Cadillac's glove compartment, pulled out a container[1] containing a small amount of marihuana residue, and handed the container to Rougeou. R.A. then went back to the glove compartment, produced a pill bottle, and without prompting gave it to Rougeou, who recognized the pills inside as the prescription drug Xanax (alprazolam). R.A. did not have a prescription for the drug. After some further questioning, Rougeou arrested R.A. and took him to the Gardner-Betts Juvenile Detention Facility. Rougeou testified that, before the arrest, he did not tell R.A. that he would not be free to leave after the traffic stop. He also said that he did not raise his voice, and that R.A. was cooperative throughout the encounter.

Before trial, R.A. moved to suppress both the marihuana and the Xanax, arguing that he handed over the drugs in response to custodial interrogation, and that Rougeou failed to meet the pre-interrogation requirements of either *Miranda v. Arizona* or the Texas Family Code. *See Miranda v. Arizona*, 384 U.S. 436 (1966); Tex. Fam. Code Ann. § 51.095 (West 2002). After a hearing at which only Officer Rougeou testified, the juvenile court referee found that R.A. produced the marihuana while in custody and in response to Rougeou's offer of leniency, and suppressed the marihuana container. He further ruled that R.A.'s production of the Xanax was not in response to the offer of leniency, and so allowed the pill box as evidence. R.A. later pleaded "true" to misdemeanor possession of a controlled substance, the Xanax, in exchange for six months' probation and a required drug treatment program. R.A. appealed the referee's ruling admitting the Xanax.

The parties stipulate that the stop, search, and seizure were made without a warrant, and that Officer Rougeou neither advised R.A. of his *Miranda* rights nor took him before a magistrate prior to questioning.

---

[1] Rougeou described it as "some bubble gum thing" or a "Play-Doh container."

**Standard of Review**

When reviewing a lower court's ruling on a motion to suppress, we afford almost total deference to a trial court's determination of historical facts supported by the record, especially when those findings are based on evaluations of credibility and demeanor. *Balentine v. State*, 71 S.W.3d 763, 768 (Tex. Crim. App. 2002); *Guzman v. State*, 955 S.W.2d 85, 89 (Tex. Crim. App. 1997). We afford the same deference to rulings on any mixed questions of law and fact, so long as those questions turn on an evaluation of credibility and demeanor. *Guzman v. State*, 955 S.W.2d at 89. We review *de novo* any mixed questions of law and fact that do not turn on credibility and demeanor. *Balentine v. State*, 71 S.W.3d at 768. When the district court does not make explicit findings of fact, we review the evidence in a light most favorable to the district court's ruling, and assume that the district court made implicit findings of fact supported in the record. *Id.* We will uphold the trial court's ruling if it is reasonably supported by the record and is correct under any theory of law applicable to the case. *State v. Steelman*, 93 S.W.3d 102, 107 (Tex. Crim. App. 2002).

**Discussion**

R.A. argues that the trial court should have excluded the Xanax because he was not timely advised of his constitutional *Miranda* rights and was not taken before a magistrate as mandated by section 51.095 of the Texas Family Code. *Miranda* and section 51.095 apply to a suspect who is questioned while in custody. *See Berkemer v. McCarty*, 468 U.S. 420, 428 (1984) (*citing Miranda v. Arizona*, 384 U.S. 436, 444 (1966)); Tex. Fam. Code Ann. § 51.095(b)(1), (d)(2).[2]

---

[2] Section 51.095 of the Family Code, in relevant part:

(b) This section . . . do[es] not preclude the admission of a statement made by the
    child if

Therefore, we begin by determining whether R.A. was in custody when he handed the Xanax to Rougeou. Since the underlying facts are undisputed, the question of admissibility of the evidence will not turn on credibility and demeanor; we therefore review *de novo* the trial court's decision that R.A. was in custody. *Balentine v. State*, 71 S.W.3d at 768; *Guzman v. State*, 955 S.W.2d at 89.

Determinations of custody are made on a case-by-case basis, considering all the objective circumstances. *Dowthitt v. State*, 931 S.W.2d 244, 255 (Tex. Crim. App. 1996). A person is in custody only if, under the circumstances, a reasonable innocent person would believe that his freedom of movement was restrained to the degree associated with formal arrest. *Id*. at 254. A routine traffic stop is a seizure, but does not by itself give rise to custody for *Miranda* purposes. *Berkemer v. McCarty,* 468 U.S. at 437; *see State v. Stevenson*, 958 S.W.2d 824, 828-29 (Tex. Crim. App. 1997) (applying *Berkemer* to a DWI investigation at the scene of a traffic accident) and *State v. Waldrop*, 7 S.W.3d 836 (Tex. App.—Austin 1999, no pet.). In that respect, a traffic stop is akin to an investigative detention or "Terry" stop. *Berkemer v. McCarty*, 468 U.S. at 439. This is because a traffic stop is public in nature and also is "presumptively temporary and brief"—a driver who has been pulled over knows that he will be free to leave in a relatively short time, perhaps after having been issued a citation. *Id.* at 437-38. A traffic stop may escalate into a custodial interrogation, however, depending on subsequent events. *State v. Stevenson*, 958 S.W.2d at 828.[3]

---

(1) the statement does not stem from interrogation of the child under a circumstance described by Subsection (d) . . .

. . .

(d) (2) while the child is in the custody of an officer[.]"

[3] The court has described a four-factor test to determine whether a detention has escalated to a custodial situation: (1) probable cause to arrest; (2) subjective intent of police; (3) focus of the

Officer Rougeou's stop of R.A. does not rise beyond the level of an investigative detention as described in *Berkemer*, and as applied in this Court's decision in *Osbourn v. State*, 59 S.W.3d 809 (Tex. App.—Austin, 2001), *aff'd*, 92 S.W.3d 531 (2002). In *Berkemer*, a DWI case, the Supreme Court found that statements made by a defendant during a routine traffic stop, both before and after he failed a field sobriety test, were non-custodial. *See Berkemer v. McCarty*, 468 U.S. at 423-24. The Supreme Court described a degree of interaction that it found not to be custodial: "[A] single police officer asked respondent a modest number of questions and requested him to perform a simple balancing test." *Id.* at 442.

In *Osbourn*, this Court found that drugs turned over to police during a routine traffic stop were admissible. *Osbourn v. State*, 59 S.W.3d at 817. The facts of *Osbourn* are strikingly similar to the present case. Vicki Osbourn was a passenger in a car that was stopped for high light beams while traveling towards oncoming traffic.[4] *Id.* at 811. Police officers at the scene told Osbourn that they smelled marihuana. *Id.* at 812. When an officer asked her if there was marihuana in the vehicle, Osbourn (after some dialogue) not only admitted that there was, but also, without explicit prompting, told the officer where it was. *Id.* The Court stated, without further discussion, that "[Osbourn's] voluntary on-the-scene admission was not the result of custodial interrogation." *Id.* at 817 (citing *State v. Stevenson*, 958 S.W.2d at 829, and *State v. Waldrop*, 7 S.W.3d at 839).

investigation; and, (4) subjective belief of the defendant. *Dowthitt v. State*, 931 S.W.2d at 254. Factors two and four are relevant only to the extent that they are manifested in the words of actions of law enforcement officials. *Id.*

[4] Scott Conyers, the car's driver, was also arrested and charged with DWI and possession of marihuana. *Osbourn v. State*, 59 S.W.3d at 811.

The present facts closely track those of *Osbourn*. R.A. was pulled over for a minor traffic violation. Officer Rougeou smelled marihuana and discussed what he smelled with the occupants of the vehicle he had pulled over. And R.A. gave up his drugs with very little prompting by Rougeou. Furthermore, R.A. had an extra reason to believe, as described in *Berkemer*, that his traffic stop would be "temporary and brief"—Officer Rougeou told him that he could be lenient and write a citation for possession of marihuana. We find that a reasonable, innocent person in R.A.'s position would not believe that he was restrained to the degree of an actual arrest; accordingly, we find that R.A. was not in custody when he produced the drugs. *See Berkemer v. McCarty*, 468 U.S. 420; *State v. Stevenson*, 958 S.W.2d 824; *Osbourn v. State*, 59 S.W.3d 809.

**Conclusion**

Because we find that R.A. was not in custody when he gave a pill bottle containing Xanax to Officer Rougeou, and because custody is a precursor to the warning requirements of *Miranda* and section 51.095 of the Texas Family Code, we overrule R.A.'s single point of error. We affirm the judgment of the district court.

_____

Bea Ann Smith, Justice

Before Chief Justice Law, Justices B. A. Smith and Pemberton

Affirmed

Filed: June 15, 2005