# TEXAS COURT OF APPEALS, THIRD DISTRICT, AT AUSTIN

---

## NO. 03-09-00356-CR

---

**The State of Texas, Appellant**

**v.**

**Randall Chupik, Appellee**

---

### FROM THE COUNTY COURT AT LAW NO. 8 OF TRAVIS COUNTY
### NO. C-1-CR-08-222890
### HONORABLE CARLOS HUMBERTO BARRERA, JUDGE PRESIDING

---

## M E M O R A N D U M   O P I N I O N

The State appeals a pretrial order suppressing evidence in a driving while intoxicated prosecution. The State contends that the trial court erred by concluding that appellee Randall Chupik was subjected to custodial interrogation without being advised of his rights. Because there is nothing in the record to show that the court's ruling will result in the exclusion of any evidence at trial, and because the record is inadequate to review the merits of the trial court's ruling in any event, we conclude that the State's appeal presents nothing for review.

Chupik filed a pretrial motion to suppress evidence urging that the initial stop of his vehicle was unlawful and that any statements he made during the stop were obtained in violation of the Fifth Amendment and article 38.22. *See Miranda v. Arizona*, 384 U.S. 436 (1966); Tex. Code Crim. Proc. Ann. art. 38.22 (West 2005). At a hearing on the motion, the only witness was Austin

police officer Richard Mabe. Mabe testified that he stopped Chupik's vehicle shortly before 1:00 a.m. after seeing it change lanes without signaling. Mabe testified that he had been following Chupik for several minutes and suspected that he might be intoxicated because his vehicle had been weaving within its lane of traffic. Defense exhibit one, containing a three-minute excerpt from Mabe's in-car video recording system, was introduced in evidence at the hearing. The video shows appellant's vehicle driving down West Sixth Street followed by Mabe's patrol car, and it contains Mabe's running commentary on the quality of appellant's driving. The video exhibit ends when appellant is stopped by the officer.

Mabe testified that when he spoke to Chupik through the driver's window immediately after the stop, he smelled the odor of alcoholic beverage on Chupik's breath and noticed that Chupik's speech was slurred and his eyes were bloodshot. Mabe ordered Chupik to get out of his vehicle, and he began to ask him a series of questions, twenty or twenty-one in all, beginning with, "Without looking at your watch, can you tell me what time it is?" and ending with, "How much do you weigh?" The other questions had to do with such matters as where Chupik had been that night, whether and how much he had been drinking, and the state of his health. Mabe testified that he was trained to ask these questions as part of a DWI investigation before administering the field sobriety tests. Mabe acknowledged that Chupik was not free to leave during this questioning, but he testified that Chupik was not restrained and was not told that he was under arrest.

After completing this questioning, Mabe administered the standardized field sobriety tests, beginning with the horizontal gaze nystagmus (HGN) test. Mabe did not specifically describe Chupik's performance on this test, but he testified that when it was concluded, he believed that he

had probable cause to arrest Chupik for DWI. Mabe further testified, however, that he did not decide to arrest Chupik until after the other field tests were completed.

After hearing the evidence summarized above, the trial court ruled that the initial stop had been justified by reasonable suspicion. The court also refused to suppress Chupik's answers to the questions he had been asked by Mabe prior to the field tests, ruling that this questioning did not constitute custodial interrogation. The court announced, however, "I also believe that the defendant was under arrest after the HGN was performed. So I'm going to suppress any statements subsequent to the HGN or any answers to questions after the HGN." The court memorialized this ruling in a written order stating that Chupik's "responses to questions and the questions themselves are suppressed after the administration of the HGN test."

The trial court later prepared written findings of fact and conclusions of law. Pertinent to this appeal, the court found:

> 4. After observing and questioning Mr. Chupik and administering the [HGN] test Officer Mabe decided he had probable cause to arrest Chupik for [DWI].
>
> 5. Officer Mabe did not "arrest" Mr. Chupik at that point but continued to question him and administered further Standardized Field Sobriety Tests.
>
> 6. Officer Mabe continued to question Mr. Chupik after the probable cause for arrest determination was made and without the benefit of the *Miranda* warnings.
>
> . . .
>
> 8. Under the circumstances, a reasonable man in Mr. Chupik's position would have understood that he was under arrest by the time the [HGN] test was concluded.

The court concluded, in pertinent part:

2. Officer Mabe made the determination that he had probable cause to arrest Mr. Chupik for [DWI] at the conclusion of the administration of the [HGN] test.

3. Officer Mabe did have probable cause to arrest Mr. Chupik at the conclusion of the administration of the [HGN] test.

4. Mr. Chupik was under arrest at the conclusion of the administration of the [HGN] test.

5. After the administration of the [HGN test] Mr. Chupik was subjected to custodial interrogation without having had his *Miranda* warnings recited to him.

6. The answers to all questions asked of Chupik after the administration of the [HGN test] were taken in violation of Mr. Chupik's right to remain silent, exclusive of his response to the question as to whether he would give a breath or blood sample.

7. The evidence suppressed in this case is not of substantial importance relative to the quantity and quality of other evidence the State has available to present to prove this charge.

The State's brief to this Court raises two contentions. First, referring to the trial court's seventh conclusion, the State urges that the determination as to whether suppressed evidence is of substantial importance to the State's case rests with the prosecuting attorney rather than the trial court. Second, the State asserts that the trial court erred by concluding that Chupik was in custody for *Miranda* purposes after Mabe administered the HGN test. In his own brief, Chupik argues that the State's second contention presents nothing for review because the record does not show what statements, if any, were suppressed.

The State may appeal a trial court's order granting a motion to suppress evidence if jeopardy has not attached and if the prosecuting attorney certifies to the trial court that the appeal is

4

not taken for the purpose of delay and that the evidence is of substantial importance in the case. Tex. Code Crim. Proc. Ann. art. 44.01(a)(5) (West Supp. 2009). Under the plain language of article 44.01(a)(5), it is the prosecutor's certification that the suppressed evidence is of substantial importance, and not the trial court's opinion of the matter, that is critical to the right of appeal. The court of criminal appeals has stated that article 44.01(a)(5) "simply requires the certification rather than any showing of the underlying basis for such." *Johnson v. State*, 871 S.W.2d 744, 749 (Tex. Crim. App. 1994).[1] The issue in *Johnson* was whether the appellee was entitled to challenge the prosecutor's certification; the court held that he was not. *Id*. In this case, the prosecutor provided the certification required by article 44.01(a)(5). The trial court's conclusion that the suppressed evidence is not of substantial importance to the case does not affect the State's right of appeal.

The more serious issue is whether the State's second contention is properly before us for review. The trial court's findings state that Mabe continued to question Chupik after administering the HGN test, but the record does not support this statement. *See Guzman v. State*, 955 S.W.2d 85, 89 (Tex. Crim. App. 1997) (holding that appellate courts defer to trial court's findings of historical facts "that the record supports"). The questioning challenged by Chupik at the hearing took place immediately after the stop and before the HGN test was administered, and the trial court overruled Chupik's motion to suppress his answers to those questions. Mabe was not asked if he questioned Chupik following the HGN test, and there is nothing in the record indicating that he did. As to what happened after the HGN test, the record shows only that Mabe administered the other field tests and then formally arrested Chupik. Although we assume that the entire roadside

---

[1] Despite the style of the case, *Johnson* was a State appeal.

encounter was recorded, only a brief portion of the recording, ending with the stop itself, was made a part of the record as defense exhibit one. Insofar as the record reflects, this exhibit was the only portion of the video recording viewed at the hearing.

The State concedes that the record does not reflect the questions and answers, if any, that were suppressed by the court. The State argues, however, "Courts decide every day the pre-trial issue of whether the fruits of a stop or an arrest should be suppressed, without knowing what those fruits are. Courts have never required the defense to set out the specific fruits of an allegedly illegal stop or arrest before they will address themselves to whether the trial court properly determined that the stop or arrest was lawful."

In fact, the court of criminal appeals has held that when a defendant seeks to challenge an order overruling a motion to suppress evidence, the appellate court must be able to identify "the fruits" that the trial court held would not be suppressed. *Gonzales v. State*, 966 S.W.2d 521, 524 (Tex. Crim. App. 1998). If it is not clear from the testimony and exhibits what "the fruits" are, the appellate court need not address the merits of the claim. *Id*.; *see also McGlynn v. State*, 704 S.W.2d 18, 20 (Tex. Crim. App. 1986) (op. on reh'g). We understand *Gonzales* to mean that a defendant seeking to appeal an order overruling a motion to suppress must raise more than a hypothetical or academic question regarding the propriety of police conduct. At a minimum, the record must reflect that the issue raised is pertinent to the admissibility of actual evidence in the case. *See Terry v. Ohio*, 392 U.S. 1, 12 (1968) ("the issue is not the abstract propriety of the police conduct, but the admissibility against [the defendant] of the evidence uncovered by the search and seizure"). In this sense, *Gonzales* is an application of the broader principle that courts do not decide

6

abstract questions of law or issue advisory opinions. *See Hays County v. Hays County Water Planning P'ship*, 106 S.W.3d 349, 358 (Tex. App.—Austin 2003, no pet.); *Gardner v. State*, 782 S.W.2d 541, 545 (Tex. App.—Houston [1st Dist.] 1989, pet. ref'd).

The State seeks to challenge the trial court's conclusion that Chupik was in custody after the HGN test was administered and, therefore, that any subsequent questioning constituted custodial interrogation. But absent any indication in the record that such questioning took place, the issue of whether Chupik was in custody has no relevance to the admissibility of actual evidence in the case. We may not advise trial courts on abstract or hypothetical issues of law.

Near the end of the hearing below, the trial court stated, in reference to its conclusion that Chupik had been subjected to unwarned custodial interrogation after the HGN test was completed, "I want to see the rest of the video to finalize that." Even if we assume that the court later viewed a video recording of the entire roadside encounter between Mabe and Chupik and that this video shows that Chupik was questioned by Mabe following the HGN test, we have no basis for reviewing the trial court's conclusion that this questioning constituted custodial interrogation because the video recording on which the court based its conclusion is not in the record.

The State relies on the Supreme Court's holding in *Berkemer v. McCarty* that persons who are temporarily detained pursuant to a routine traffic stop are not in custody for the purposes of *Miranda*. *Berkemer v. McCarty*, 468 U.S. 420, 440 (1984). But in rejecting the argument that *Miranda* applies to all traffic stops, the Court also rejected the argument that a suspect need not be advised of his rights pursuant to *Miranda* until he is formally placed under arrest. *Id*. at 441. In other words, what begins as a noncustodial traffic stop may escalate into custody, and thereby

trigger *Miranda*, before the driver is formally arrested. *See id*. at 441-42; *State v. Stevenson*, 958 S.W.2d 824, 828 (Tex. Crim. App. 1977); *State v. Waldrop*, 7 S.W.3d 836, 839 (Tex. App.—Austin 1999, no pet.). Whether a particular traffic stop has escalated into a custodial detention can only be determined by considering the objective circumstances. *Stevenson*, 958 S.W.2d at 829.

In this case, the trial court concluded, presumably after watching a video recording of the encounter, that what began as a routine, noncustodial traffic stop had escalated into a custodial detention by the time Mabe finished administering the HGN test to Chupik. Because the video recording is not before us, we have no basis for determining whether the trial court properly applied the law to the facts in this case. Although we do know from the record that Chupik had not been formally arrested, this fact alone is not determinative of the issue. *Berkemer*, 468 U.S. at 441. For this reason as well, nothing is presented for review.

The trial court's order is affirmed.

_____

Jan P. Patterson, Justice

Before Justices Patterson, Puryear and Henson

Affirmed

Filed: May 13, 2010

Do Not Publish