

# In The
# Court of Appeals
# Seventh District of Texas at Amarillo

___

No. 07-17-00018-CR

___

MARGARITO PEREZ CARMONA, APPELLANT

V.

THE STATE OF TEXAS, APPELLEE

___

On Appeal from the Criminal District Court 1
Tarrant County, Texas
Trial Court No. 1435647D, Honorable Elizabeth H. Beach, Presiding

___

August 7, 2018

## MEMORANDUM OPINION

Before QUINN, C.J., and CAMPBELL and PIRTLE, JJ.

Appellant Margarito Perez Carmona was convicted by a Tarrant County jury of the second-degree felony offense of intoxication manslaughter with a vehicle[1] and sentenced to a fifteen-year term of imprisonment.[2] Through this appeal, he challenges the trial court's denial of his motion to suppress. We will affirm the trial court's judgment.

___

[1] TEX. PENAL CODE ANN. § 49.08(b) (West 2018).

[2] TEX. PENAL CODE ANN. § 12.33 (West 2018). A second-degree felony is punishable by imprisonment for any term of not more than twenty years or less than two years and a fine not to exceed $10,000.

Background

Appellant filed a motion to suppress statements he made before officers read him the *Miranda* warnings. The trial court carried the motion into trial and denied it during the testimony of the officer who questioned appellant.

The prosecution stemmed from a crash on Interstate 35 north of downtown Fort Worth. The crash occurred about 2:30 a.m. on November 15, 2015, on an overpass. By the time the court ruled on the suppression motion, witnesses had described how traffic had come to a stop in the southbound lanes,[3] when appellant, driving his Ford F-150 pickup, rear-ended a Nissan sedan. The collision embedded the front of appellant's vehicle into the destroyed trunk area of the Nissan. The Nissan's driver was killed and its passenger injured. The collision forced the Nissan into the rear of a Lexus sedan. The Lexus hit the rear of a semi-trailer truck.

Officer Macha testified he arrived at the scene and briefly spoke with appellant, who was standing near the "wall" at the edge of the overpass. After Macha assisted with the efforts to direct traffic off the interstate highway, he returned his attention to appellant. Being aware the crash had caused a fatality, and having seen a beer bottle in the cup holder of appellant's vehicle, Macha escorted appellant to a patrol car, holding him by the arm. He patted appellant down and placed him in the car's back seat. The patrol car's back doors do not open from the inside and a metal cage separates the back seat from the front. Appellant was not handcuffed, and Macha agreed appellant was informed "that

---

[3] A responding police officer said at that hour the southbound lanes were partially "shut down" south of the overpass for highway construction.

he's not under arrest and just being detained." Macha also agreed with the prosecutor that drivers are not detained in the back of patrol cars every time there is a wreck but when officers suspect "this is a crime and not an accident."

Macha estimated he placed appellant in the patrol car at about 3:20 a.m. Detective Martin testified he arrived about five minutes later to begin his accident investigation. At a point, he opened the door of the cruiser to speak with appellant and was met with the odor of alcohol. He then requested the DWI unit be dispatched. Because appellant indicated he did not speak English, Martin also requested an interpreter. Martin did not speak further with appellant.

A member of the DWI unit, Officer Hernandez, arrived at the crash scene at 4:18 a.m.[4] He testified he is the only Spanish-speaking officer in the Fort Worth police DWI unit. Within a few minutes of his arrival, after speaking with officers on the scene Hernandez removed appellant from the patrol car.

After hearing additional testimony from Hernandez outside the jury's presence, the trial court heard argument on the motion to suppress and denied it.[5] In its ruling, the court voiced the conclusions that appellant was temporarily detained and not in custody when he was questioned by Hernandez, and *Miranda* warnings thus were not required.

After the ruling, Hernandez testified to appellant's responses to his questions, providing evidence that enabled a later State witness to perform a retrograde extrapolation analysis and estimate appellant's blood alcohol level at the time of the

---

[4] Hernandez testified he was delayed in his dispatch to this wreck because he was on another call.

[5] Appellant did not give testimony in support of his motion to suppress.

3

collision was .17.   After Hernandez conducted standardized field sobriety tests,[6] he arrested appellant for driving while intoxicated.

Analysis

By his sole appellate issue, appellant argues the trial court should have granted his suppression motion because he was in custody at the time he made the incriminating statements to Hernandez.   *See Miranda v. Ariz.*, 384 U.S. 436, 467 (1966); TEX. CODE CRIM. PROC. ANN. art. 38.22.   We disagree.

We review a ruling on a motion to suppress evidence for abuse of discretion. *Shepherd v. State,* 273 S.W.3d 681, 684 (Tex. Crim. App. 2008) (citation omitted).   In doing so, we apply a bifurcated standard of review.   *Carmouche v. State*, 10 S.W.3d 323, 327 (Tex. Crim. App. 2000).   Under this standard, we give almost total deference to a trial court's determination of historical facts but review *de novo* the trial court's application of the law to those facts.   *Id.*

A trial judge's ultimate "custody" determination presents a mixed question of law and fact.   *Herrera v. State,* 241 S.W.3d 520, 526 (Tex. Crim. App. 2007); *Roberts v. State,* Nos. 07-15-00282-CR, 07-15-00283-CR, 2017 Tex. App. LEXIS 6019, at *11-12 (Tex. App.—Amarillo June 28, 2017, no pet.) (mem. op., not designated for publication).   No findings of fact were requested.   When a trial judge denies a motion to suppress and does not enter findings of fact, we view the evidence in the light most favorable to the trial court's ruling and we assume that the court made implicit findings of fact that support its

---

[6] Hernandez also testified to the clues of intoxication he observed during the field sobriety tests.   Appellant agreed to a breath alcohol test.   That test, administered some three hours after the collision, yielded results of an alcohol level of .131 and .137.

4

ruling as long as those findings are supported by the record. *Id.* (citing *Herrera,* 241 S.W.3d at 526-27) (internal quotations and citations omitted).

It was appellant's initial burden at trial to clearly establish that the challenged statements were the product of custodial interrogation. *Herrera,* 241 S.W.3d at 526 (citation omitted). For this purpose, "[a] person is in 'custody' only if, under the circumstances, a reasonable person would believe that his freedom of movement was restrained to the degree associated with a formal arrest." *Dowthitt v. State*, 931 S.W.2d 244, 254 (Tex. Crim. App. 1996) (citing *Stansbury v. California*, 511 U.S. 318 (1994) (per curiam)); *see also Howes v. Fields*, 565 U.S. 499, 508-09 (2012) (under *Miranda* case law, "'custody' is a term of art that specifies circumstances that are thought generally to present a serious danger of coercion"). "The 'reasonable person' standard presupposes an *innocent* person." *Id.* (citations omitted). We apply the standard on an *ad hoc*, case-by-case basis, looking only to the objective factors surrounding the person's detention. *State v. Ortiz*, 382 S.W.3d 367, 372 (Tex. Crim. App. 2012). We do not consider the subjective beliefs of a detaining officer in our evaluation of custody unless the officer manifests to the detainee a belief he is a suspect. *Id.* at 372-73.

Although a traffic stop "significantly curtails the 'freedom of action'" of a vehicle's driver, individuals temporarily detained pursuant to a traffic stop are not "in custody" for *Miranda* purposes. *Berkemer v. McCarty*, 468 U.S. 420, 436, 440 (1984) (citations omitted); *see Ortiz*, 382 S.W.3d at 376 (first three of four situations described in *Dowthitt*, 931 S.W.2d at 255, that may constitute custody require a restriction on the detainee's freedom of movement that is more than just "significant"—it must be "to the degree associated with an arrest") (internal quotation marks omitted). The requirements imposed

5

by *Miranda* become applicable, however, as soon as a suspect's freedom of action is curtailed to a degree associated with a formal arrest. *Id.* at 440 (internal quotation omitted). Thus, events subsequent to the detention may cause the escalation of a noncustodial encounter with police into custodial interrogation. *State v. Stevenson*, 958 S.W.2d 824, 828 (Tex. Crim. App. 1997) (applying *Berkemer* analysis to investigative detention after traffic accident); *Dowthitt*, 931 S.W.2d at 257 (concluding defendant interrogated over several-hour period was in custody from the point he made a critical admission).

Asserting he was in custody at the time Hernandez questioned him, appellant relies primarily on his unhandcuffed confinement in the back of the patrol car. We do not agree that a reasonable person in appellant's circumstances would consider Macha's placement of him in the patrol car as indicating he was restrained to the degree associated with an arrest. *See State v. Saenz,* 411 S.W.3d 488, 496 (Tex. Crim. App. 2013) (officer does not necessarily manifest to suspect probable cause to arrest merely by silently placing him in back of patrol car); *Keaton v. State*, 755 S.W.2d 209, 210 (Tex. App.—Houston [1st Dist.] 1988, pet. ref'd) (placement of traffic-stop suspect into back of patrol car to ask for license and registration was not custodial interrogation under *Miranda*).

Appellant argues Macha's statement that appellant was informed he was not under arrest but was merely detained has "little meaning" because appellant understood only Spanish. We agree with the State's contention the trial court could have concluded otherwise. Macha's testimony contains no indication that appellant could not understand him, and the trial court had engaged in exchanges in English with appellant earlier in the proceedings. Viewed in the light most favorable to the trial court's ruling, the record

6

supports a conclusion that Macha effectively communicated to appellant that he was not under arrest.

Appellant further points to the period of time he remained confined in the patrol car. As noted, Macha estimated he placed appellant there at about 3:20 a.m., close to an hour after the collision. Some minutes later, detective Martin opened the door of the patrol car and attempted to talk with appellant. He was not able to do so because of appellant's response that he did not speak English. Hernandez arrived on the scene at 4:18 and did not remove appellant from the vehicle until several minutes later.

We cannot doubt that a driver like appellant, involved in a serious wreck on an interstate highway, expects to be questioned by officers. After Martin's attempt to talk with him failed, a reasonable person in appellant's circumstances might wonder why it took so long for another officer to contact him. But we see no reason why such a person would believe that his custodial circumstance had changed from the detention spoken by Macha to one equivalent to arrest merely because he had told Martin he did not speak English and then had been left alone in the car for near an hour.[7] *See Villalobos v. State,* No. 14-16-00593-CR, 2018 Tex. App. LEXIS 3577, at *12-13 (Tex. App.—Houston [14th Dist.] May 22, 2018, no pet.) (mem. op., not designated for publication) (placement of defendant in patrol car to wait for DWI officer was temporary detention for the purpose of investigation of a DWI accident and did not render defendant in custody under *Miranda*).

---

[7] Elsewhere in his testimony Martin estimated that he called for the DWI unit around 3:35 or 3:40, after his contact with appellant. If that testimony was accurate, appellant's wait for Hernandez to contact him was closer to 45 minutes.

In addition, considering "all the factors surrounding the interrogation," *Stansbury*, 511 U.S. at 325, we find a reasonable person in appellant's shoes would have been aware, as he observed the events after the collision, that the officers present had other responsibilities. Despite the early-morning hour, traffic was heavy.[8] Macha testified he performed a number of tasks after he arrived, including taking photographs and helping divert traffic off the interstate. Martin said on his arrival "[w]e had multiple units trying to direct traffic." Ambulances had removed the Nissan passenger and the Lexus driver, but Martin testified the deceased Nissan driver still was in the driver's seat when he arrived to begin his accident investigation. Fire department units remained on the scene.

Appellant also makes a point to note he was without a cell phone in the patrol car and thus was unable to contact his family. A *Miranda* analysis may include a police refusal of a suspect's requests to see relatives and friends. *Xu v. State*, 100 S.W.3d 408, 413 (Tex. App.—San Antonio 2002, pet. ref'd); *see Yarborough v. Alvarado*, 541 U.S. 652, 665 (2004); *Dowthitt*, 931 S.W.2d at 256. Macha testified he did not know if appellant had a cell phone at the collision site. He also said he did not find a phone when he checked appellant for weapons. In response to a later question, Macha said, "In fact, I can't even recall when I saw him on the side of the road, the first initial contact, if he was talking to anybody on his phone then . . . . Or if he even had a phone to that point." We see no evidence that a phone had been taken from appellant or that officers were otherwise responsible for his lack of a phone. We do not agree a reasonable person would consider himself to be restrained as though arrested because he did not have a phone with him unless police were responsible for its absence. *See Ervin v. State,* 333

---

[8] Macha testified to the difficulty he had reaching the collision site because of heavy traffic.

S.W.3d 187, 206 (Tex. App.—Houston [1st Dist.] 2010, pet. ref'd) (because evidence found credible by the trial court showed defendant's cell phone was not taken from her by the officers, defendant could not reasonably believe she was in custody for that reason).

A suspect may be in custody if officers have probable cause to arrest and make the suspect aware of that fact, if the manifestation of probable cause, combined with other circumstances, would lead a reasonable person to believe he is under restraint to the degree associated with an arrest. *Dowthitt*, 931 S.W.2d at 255. We have noted Macha's testimony suggesting that drivers involved in wrecks are detained in patrol cars when officers suspect "this is a crime and not an accident." But suspicion is not probable cause, and an officer's silent placement of a driver into the back of a patrol car does not necessarily manifest probable cause to arrest. *Saenz,* 411 S.W.3d at 496. And, Macha's placement of appellant was not silent, but accompanied by the information he was not under arrest.

Martin testified that in his mind the facts he possessed did give rise to probable cause for appellant's arrest for driving while intoxicated.[9] The record, however, gives no indication that Martin made appellant aware of his belief. *See Ortiz*, 382 S.W.3d at 373 (officer's subjective belief relevant if manifested to detainee).

At the time of its ruling, during Hernandez's testimony, the court made reference to Hernandez's statement that he did not have probable cause to make an arrest at the

---

[9] The facts mentioned to Martin on cross examination were "So you knew a beer in the car, you knew that somebody had died, and you had a smell of alcohol on the defendant . . . ."

9

outset of his questioning of appellant. It is clear from its remark that the court agreed with the officer's statement, and we also agree with it. From our review of the record it is clear that, until Hernandez began his DWI investigation, no officer had taken any significant steps to evaluate appellant's sobriety.

Appellant has failed to demonstrate that the record as a whole clearly established the challenged statements were the product of custodial interrogation. *Herrera,* 241 S.W.3d at 526. Accordingly, we find the record supports the trial court's conclusions. Finding the trial court did not abuse its discretion by overruling appellant's motion to suppress his statements, we resolve appellant's issue against him.

Conclusion

Having overruled appellant's issue, we affirm the judgment of the trial court.

James T. Campbell
Justice

Do not publish.