

# IN THE
## TENTH COURT OF APPEALS

### No. 10-11-00117-CR

**BRADFORD RANDLE,**

                                            **Appellant**

 **v.**

**THE STATE OF TEXAS,**

                                            **Appellee**

### From the 40th District Court
### Ellis County, Texas
### Trial Court No. 35109CR

## MEMORANDUM  OPINION

Bradford Craig Randle was convicted of aggravated assault on a public servant and sentenced to 20 years in prison.  TEX. PENAL CODE ANN. § 22.02 (West 2011).  We affirm.

### BACKGROUND

After a traffic stop by a deputy with the Ellis County Sheriff's Department, Randle threatened the deputy with a knife.  The deputy shot Randle in the abdomen, and Randle was taken to the emergency room at Parkland Hospital in Dallas.  Randle

ultimately gave two oral statements about what had occurred. Both statements were recorded and introduced into evidence. Prior to making the first statement in the hospital, he was not given his statutory warnings pursuant to article 38.22, section 2(a) of the Texas Code of Criminal Procedure.[1] Prior to making the second statement in jail, Randle *was* given his statutory warnings.

## CUSTODIAL INTERROGATION

Randle first argues that the trial court erred in admitting his statement[2] in contravention of article 38.22, section 3 of the Texas Code of Criminal Procedure. TEX. CODE CRIM. PROC. ANN. art. 38.22, § 3 (West 2005). Specifically, he contends his oral statement at the hospital after surgery was the result of a custodial interrogation and he should have been given the statutory warnings pursuant to section 2(a) of article 38.22. *Id*. §§ 2(a); 3(a)(2).

Oral statements made by an accused as a result of custodial interrogation are not admissible unless made in compliance with the provisions of article 38.22 of the Code of Criminal Procedure. *See id*. But, statutory warnings are required only when the statement stems from custodial interrogation. *Id*.; *Herrera v. State*, 241 S.W.3d 520, 526 (Tex. Crim. App. 2007).

---

[1] These warnings are substantially similar to the warnings required by *Miranda v. Arizona*, 384 U.S. 436, 86 S. Ct. 1602, 16 L. Ed. 2d 694 (1966). *See Herrera v. State*, 241 S.W.3d 520, 526 (Tex. Crim. App. 2007).

[2] Although Randle occasionally refers to "statements" made, it appears that, for this issue, he is referring only to the oral statement he made at the hospital.

At trial, the defendant bears the initial burden of proving that a statement was the product of custodial interrogation. *Gardner v. State*, 306 S.W.3d 274, 294 (Tex. Crim. App. 2009). A person is in "custody" only if, under the circumstances, a reasonable person would believe that his freedom of movement was restrained by law enforcement to the degree associated with a formal arrest. *Dowthitt v. State*, 931 S.W.2d 244, 254 (Tex. Crim. App. 1996) (citing *Stansbury v. California*, 511 U.S. 318, 323-25, 114 S. Ct. 1526, 1529-30, 128 L. Ed. 2d 293 (1994)). The determination of "custody" must be made on an ad hoc basis, after considering all of the objective circumstances. *Dowthitt*, 931 S.W.2d at 255 (Tex. Crim. App. 1996). In reviewing a trial court's "custody" determination, we conduct a bifurcated review, affording almost total deference to the trial court's rulings on questions of historical fact and on application of law to fact questions that turn upon credibility and demeanor while reviewing de novo the trial court's rulings on application of law to fact questions that do not turn upon credibility and demeanor. *Herrera v. State*, 241 S.W.3d 520, 527 (Tex. Crim. App. 2007); *Ripkowski v. State*, 61 S.W.3d 378, 381-382 (Tex. Crim. App. 2001).

At least four general situations may constitute "custody" for the purposes of article 38.22: (1) the suspect is physically deprived of his freedom of action in any significant way; (2) a law enforcement officer tells the suspect that he cannot leave; (3) law enforcement officers create a situation that would lead a reasonable person to believe that his freedom of movement has been significantly restricted; and (4) there is

probable cause to arrest and law enforcement officers do not tell the suspect that he is free to leave. *Gardner v. State*, 306 S.W.3d 274, 294 (Tex. Crim. App. 2009). In all four circumstances, the initial determination of "custody" depends on the objective circumstances of the interrogation, not on the subjective views of the interrogating officer or the person being questioned. *Dowthitt*, 931 S.W.2d at 255. In the first three circumstances, the restriction upon freedom of movement must amount to the degree associated with an arrest as opposed to an investigative detention. *Id*. With regard to the fourth circumstance, the officers' knowledge of probable cause must be communicated to the suspect to constitute "custody." *Id*.

In this case, the pertinent question is whether Randle was "in custody" for the purposes of article 38.22 when questioned at the hospital by Texas Ranger Don Stoner. Randle argues that he was in "custody" for various reasons: 1) an officer was placed outside Randle's hospital room door; 2) it was "possible" Randle was handcuffed to the hospital bed; 3) Randle was questioned at 1 a.m. after surgery; 4) Randle was interviewed hours after the incident and after an interview of the deputy involved; and 5) Ranger Stoner verified probable cause events at the interview that he already knew.

It was undisputed that an officer was placed outside Randle's hospital room door, but the only testimony as to why the officer was there came from Ranger Stoner who said the officer was there to report medical findings. There was no evidence that the officer was placed outside the door to prevent Randle from leaving. Further, there

was no evidence that Randle was handcuffed to his hospital bed. Again, Ranger Stoner was the only witness asked about whether Randle was handcuffed. He replied, "He could have been, sir. I don't know. He was under the covers." This is not evidence that Randle was handcuffed.

The evidence showed that Randle was questioned at 1 a.m. sometime after his surgery at Parkland Hospital. However, the time and location of the interview did not amount to a restriction of Randle's freedom to the degree that would be associated with an arrest. Further, regardless of whether Ranger Stoner had probable cause and could have obtained an arrest warrant, he did not have one at the time of the interview. Stoner testified that when he initially spoke to Randle at the hospital, Randle and the deputy were both suspects in the incident. After speaking with Randle, Stoner determined that Randle's version of the events did not match the evidence at the scene or the deputy's version of the events. Stoner, however, did not confront Randle with what the evidence at the scene showed or what the deputy had said occurred. Thus, there was no communication of probable cause to arrest.

Randle also argues that even if the interview began as a non-custodial encounter, it escalated to a custodial interrogation when Randle informed Stoner that he had been pulled over and got out of the car with a knife. *See State v. Stevenson*, 958 S.W.2d 824, 828 (Tex. Crim. App. 1997) ("We have recognized though, that subsequent events may cause a noncustodial encounter to escalate into custodial interrogation."). However, at

most, what occurred was a shift in focus when Stoner discovered that Randle's version of the events did not match the evidence at the scene. Even if Randle became the focus of the investigation during the interview, mere focus upon the defendant does not convert the investigation into an arrest. *See Gardner v. State*, 306 S.W.3d 274, 293 (Tex. Crim. App. 2009); *State v. Stevenson*, 958 S.W.2d 824, 829 (Tex. Crim. App. 1997).

Randle has failed to establish that he was in custody during the interview at the hospital. Therefore, the trial court did not err in admitting the recording of that noncustodial interview.

As an aside, Randle asserts that he should have been given a jury instruction pursuant to section 7 of article 38.22 of the Code of Criminal Procedure. He presents no case authority on the standard of review, whether there was error in the refusal to submit such an instruction, and if so, whether there was any harm. This argument is improperly briefed and presents nothing for review. TEX. R. APP. P. 38.1(i); *see Cardenas v. State*, 30 S.W.3d 384, 393 (Tex. Crim. App. 2000).

Randle's first issue is overruled.

## HARM

In his fourth issue, Randle appears to conduct a harm analysis of the alleged erroneous admission of the hospital statement. Because we have held that Randle was not in custody and the trial court did not err in admitting the statement for that reason, Randle's fourth issue is overruled.

**VOLUNTARINESS**

In his second issue, Randle contends that his hospital statement was involuntary. The only error, however, that he attributes to the trial court is the failure of the trial court to: 1) conduct a *Jackson v. Denno*[3] hearing as to the voluntariness of this statement pursuant to article 38.22, section 6 of the Texas Code of Criminal Procedure; 2) make findings of fact to support its conclusion as to the voluntariness of this statement pursuant to article 38.22, section 6 of the Texas Code of Criminal Procedure; and 3) include a general instruction as to the voluntariness of this statement pursuant to article 38.22, section 6 of the Texas Code of Criminal Procedure.

*Voluntariness Hearing*

Article 38.22, section 6 provides in pertinent part:

> In all cases where a question is raised as to the voluntariness of a statement of an accused, the court must make an independent finding in the absence of the jury as to whether the statement was made under voluntary conditions. If the statement has been found to have been voluntarily made and held admissible as a matter of law and fact by the court in a hearing in the absence of the jury, the court must enter an order stating its conclusion as to whether or not the statement was voluntarily made, along with the specific finding of facts upon which the conclusion was based, which order shall be filed among the papers of the cause.

TEX. CODE CRIM. PROC. ANN. art. 38.22, § 6 (West 2005).

Under the Court of Criminal Appeals' precedents, section 6 of article 38.22 applies to both an accused's custodial *and* non-custodial statements. *Oursbourn v. State*,

---

[3] 378 U.S. 368, 12 L. Ed. 2d 908, 84 S. Ct. 1774 (1964).

259 S.W.3d 159, 171 (Tex. Crim. App. 2008); *State v. Terrazas*, 4 S.W.3d 720, 727 (Tex. Crim. App. 1999). Further, a claim of involuntariness under article 38.22, section 6 encompasses subjective involuntariness claims that do not turn solely on police overreaching. *Oursbourn*, 259 S.W.3d at 172. Thus, under a section 6 inquiry, courts consider factors such as the suspect's youth, intoxication, mental retardation, or other disability. *Id*. at 172-73. Raising a "question" as to the voluntariness of the statement is what triggers the trial court's duty under section 6 to conduct a hearing outside the presence of the jury; thus, a "question is raised" when the trial judge is notified by a party or raises on his own an issue about the voluntariness of the statement. *Oursbourn*, 259 S.W.3d at 175.

### *Raising a Question*

In this case, it is undisputed that the trial court did not conduct a hearing outside the presence of the jury as to the voluntariness of Randle's hospital statement. The question becomes then; did Randle raise a question as to the voluntariness of that statement so as to trigger the trial court's duty. In reviewing the record, we believe he did.

Texas Ranger Don Stoner testified about the statement he took from Randle at the hospital. Prior to the introduction of the statement, Randle objected and a discussion was held off the record. When Randle requested to make a specific objection on the record, the trial court would not permit it at that time. Stoner then testified that

he did not know if Randle was under any medication at the time Randle made his statement and that he did not give any warnings to Randle since Randle was not under arrest. On voir dire, Stoner agreed that Randle was in and out of alertness and sleepiness and agreed that Randle was under sedation. But he contended that Randle appeared to understand what Stoner was asking him and responded appropriately to the questions asked.

After Stoner's testimony on voir dire, Randle made two more objections. The first is as follows.

> I think that in this situation, because of Mr. Randle's station (sic) level and clearly he being under investigation for a matter, I think that goes against any law we have against statements being able to be used in this type of situation. No Miranda rights were given, and clearly he was in a diminished capacity and could not formulate responses that – that were proper in this situation.

The second objection is as follows:

> … For the purposes of the record, I'm going to specify my objections as pursuant to 38.21 and 38.22 of the Code of Criminal Procedure….
> ***
> …I think at this point it would behoove everybody if we had a hearing outside the presence of the jury to determine what to do from now on.

Both of these objections were overruled.

A copy of the recorded statement was introduced into evidence and played for the jury. A written transcript of the statement was also admitted into evidence and copies were given to the jury to follow along. On cross-examination, Stoner agreed that an accused's statement had to be voluntary. He also agreed that Randle was medicated

and that he had to reassure himself that Randle was awake before he talked to Randle. Stoner disagreed, however, that, in this situation, Randle's statement was involuntary.

After Stoner's testimony, Randle asked for a mistrial, stating:

> …his testimony now is that Brad Randle was a suspect in a diminished capacity and the Court did not allow me the opportunity to have this hearing outside the presence of the jury. I think that this statement and this audio recording has gone out in front of the jury now against 38.21, against 38.22 of the Code of Criminal Procedure. I have no choice but to ask for a mistrial.

That request was denied.

All Randle was required to do was bring to the trial court's attention a "question" about the voluntariness of his hospital statement. Randle's questions to Stoner about Randle being under sedation during questioning and Randle's requests to the trial court to have a hearing outside the presence of the jury were sufficient to raise a question to the trial court to trigger its duty to conduct a hearing on the voluntariness of the statement outside the presence of the jury. Thus, the trial court erred in not conducting a hearing outside the presence of the jury to determine the voluntariness of Randle's hospital statement pursuant to section 6. *See Avila v. State*, 856 S.W.2d 260, 261 (Tex. App.—El Paso 1993, pet. ref'd).

### *Remedy*

Randle argues that the trial court's failure to hold a hearing is reversible error. But reversal of a judgment for failure to conduct a voluntariness hearing is not constitutionally required. *Mayfield v. State*, 821 S.W.2d 357, 358 (Tex. App.—Houston

[14th Dist.] 1991, order) (citing *Jackson v. Denno*, 378 U.S. 368, 376-377, 394 (1964); *Bass v. State*, 626 S.W.2d 769, 772-773 (Tex. Crim. App. [Panel Op.] 1982)). Abating the appeal for a voluntariness hearing is a possible remedy. *See Douglas v. State*, 900 S.W.2d 760, 762 (Tex. App.—Corpus Christi 1995, order); *Avila v. State*, 856 S.W.2d at 262 (abated and remanded); *Mayfield*, 821 S.W.2d at 358; *Doby v. State*, 681 S.W.2d 759, 764 (Tex. App.—Houston [14th Dist.] 1984, order). However, because another substantially similar statement by Randle was introduced into evidence without objection, we find that reviewing for harm is the best course of action. *See Martinez v. State*, 304 S.W.3d 642, 656-657 (Tex. App.—Amarillo 2010, pet. ref'd) (relying on *Kane v. State*, assumed error in admission of statement and proceeded to harm analysis); *Kane v. State*, 173 S.W. 3 589, 594 (Tex. App.—Fort Worth, 2005, no pet.) (assumed statement involuntary when no voluntariness hearing held and conducted harm analysis).

### *Harm analysis*

Assuming appellant's statement was improperly admitted, we apply rule 44.2(a) and reverse unless we determine beyond a reasonable doubt that the error did not contribute to appellant's conviction or punishment. TEX. R. APP. P. 44.2(a); *see Gardner v. State*, 306 S.W.3d 274, 295 (Tex. Crim. App. 2009); *Kane*, 173 S.W.3d at 594 (citing *Jackson*, 378 U.S. at 376) (applying constitutional harm analysis). An analysis for whether a particular constitutional error is harmless should take into account any and every circumstance apparent in the record that logically informs an appellate determination

whether beyond a reasonable doubt the error did not contribute to the conviction or punishment. *Snowden v. State*, 353 S.W.3d 815, 822 (Tex. Crim. App. 2011).

Deputy Joseph Maddox testified that while in route to a disturbance call, he saw a vehicle that matched the description for the vehicle involved in the disturbance. As he turned his patrol unit around to detain the vehicle, he saw the vehicle already pulling over. Randle stepped out of the vehicle. Maddox twice used his public address system to tell Randle to stay in the vehicle, but Randle continued to advance toward Maddox who by then was standing behind his patrol unit door for protection.[4] Randle had a piece of paper in his hand, was walking fast, and was throwing his arms in the air. He began to argue and wave the paper in Maddox's face. He then flung the paper into the patrol unit. Maddox followed the paper with his eyes and when he looked back at Randle, Randle hit him in the chin with an open hand. Randle then reached behind his back and pulled out an object. Maddox initially thought it was a gun but quickly realized it was a knife. Maddox repeated to Randle, "Don't do it," as he retreated around his patrol unit. Randle continued to approach, drew the knife up and came towards Maddox with a slashing motion. Maddox stepped back but hit the back of his patrol unit. He drew his weapon and shot Randle once. Randle threw his knife toward Maddox's feet, and it landed under the patrol car.

In his statement made at the hospital, Randle stated he was pulled over, came

---

[4] Only this part of the incident can be seen in the DVD from Maddox's in-car camera. The remainder of the incident can be heard. The entire incident happened very quickly.

out of his car with a kitchen knife, was told to put the knife down, threw the knife under the rear of *his* car, and was shot. He said he was upset about family problems and wanted the officer to shoot him. He also said he did not necessarily threaten the officer but did not blame the officer.

Randle then made another oral statement while he was in jail. He was given his *Miranda* warnings prior to making this statement, and the statement was introduced into evidence at the trial without objection. This was a much longer and more detailed statement but Randle's recollection as to the events with the deputy was substantially similar to the statement Randle made in the hospital. In the jail statement, Randle explained the family problems he was encountering prior to the incident with Maddox. While driving home, Randle saw the Sheriff's car and saw it turn around. Randle pulled over. He did not know why, but he picked up a knife from the floorboard. He started walking toward the deputy's car and was told over the loudspeaker to get back in his vehicle. Randle kept walking. After the second warning, Randle said he turned around and started walking back. He reached the end of his car and started to raise his hands and turn around. That was when he was shot. Randle also said that when he turned around, he tried to throw the knife under his car. Randle talked extensively about why he might have done what he did including physical problems, family problems, mental problems, and problems associated with the medicine he was taking. The only reason Randle said he could think of for grabbing the knife to begin with was

that he was going to let the deputy kill him.

The State did not mention either statement by Randle in its argument to the jury. The prosecutors reiterated the evidence as it was presented but did not do so in a way that placed any emphasis on the hospital statement. Both statements were substantially similar to each other as to Randle's version of the event but were markedly different than Maddox's version of the events and the DVD from Maddox's in-car camera. Further, since the statements are similar, it is unlikely that the jury would have placed much weight, if any, on the hospital statement rather than on the warned jail statement. Thus, we determine beyond a reasonable doubt that the error, if any, in admitting Randle's hospital statement did not contribute to appellant's conviction or punishment. TEX. R. APP. P. 44.2(a).

### *Conclusion and Findings*

Randle also complains that the trial court did not enter findings of fact or conclusions of law regarding the voluntariness of his hospital statement. *See* TEX. CODE CRIM. PROC. ANN. art. 38.22, § 6 (West 2005). We previously abated this appeal so that the trial court could make the requisite findings and conclusion, which it did. Randle's complaint in that regard is now moot.

### *General Voluntariness Instruction*

The only question to resolve now is whether a general instruction as to the voluntariness of the hospital statement pursuant to article 38.22, section 6 should have

been provided to the jury. This is an issue because Randle's hospital statement was found by the trial court to be voluntary.

> Article 38.22, section 6 provides in pertinent part:

> Upon the finding by the judge as a matter of law and fact that the statement was voluntarily made, evidence pertaining to such matter may be submitted to the jury and it shall be instructed that unless the jury believes beyond a reasonable doubt that the statement was voluntarily made, the jury shall not consider such statement for any purpose nor any evidence obtained as a result thereof.

TEX. CODE CRIM. PROC. ANN. art. 38.22, § 6 (West 2005).

The issue of voluntariness should be submitted to the jury under article 38.22, section 6 if, based on the evidence presented at trial, a reasonable jury could conclude that the statement was not voluntary. *Vasquez v. State*, 225 S.W.3d 541, 545 (Tex. Crim. App. 2007). The defense is still required to introduce evidence, not merely a question, at trial from which a reasonable jury could conclude that the statement was not voluntary. *Id*. Under article 38.22, section 6, there is no error in refusing to include a jury instruction where there is no evidence before the jury to raise the issue. *Id*.

As noted previously, Stoner agreed that Randle was medicated and that he had to reassure himself that Randle was awake before he talked to Randle. Stoner disagreed, however, that, in this situation, Randle's statement was involuntary. Texas Ranger Jason Bobo testified that he later went to the jail to take a statement from Randle at the request of Ranger Stoner. Stoner wanted Ranger Bobo to make sure Randle was not under the influence of anything during the taking of the prior statement due to the

fact that Randle was interviewed at the hospital possibly under "sedation of narcotics."

This is the only testimony that suggests Randle's unwarned oral statement was involuntary. However, we hold that this testimony is not evidence based upon which a reasonable jury could conclude that the statement was not voluntary. Thus, Randle was not entitled to a jury instruction pursuant to article 38.22, section 6, and the trial court did not err in failing to give that instruction.

Randle's second issue is overruled.

### MULTIFARIOUS ISSUE

Randle again complains about the admissibility of his hospital statement,[5] presenting a variety of complaints in his third issue such as: 1) the statement violated the 5th Amendment to the U.S. Constitution because Randle was in custody; 2) the failure to conduct a voluntariness hearing violated the 14th Amendment to the U.S. Constitution; 3) the statement was coerced in violation of the 14th Amendment; 4) the statement was taken in violation of article 38.23 of the Texas Code of Criminal Procedure; and 5) Randle was entitled to an article 38.23 jury instruction. The State asserts that this issue is multifarious and is improperly briefed. Randle has not disputed the State's assertion.

An issue is multifarious when it raises more than one specific complaint, and we are permitted to reject multifarious issues on that basis alone. *Mays v. State*, 318 S.W.3d

---

[5] As in other issues, Randle initially refers to "statements" in this issue. Because the hospital statement was the only statement objected to, we address this issue as it pertains to that statement.

368, 385 (Tex. Crim. App. 2010); *Wood v. State*, 18 S.W.3d 642, 649 n.6 (Tex. Crim. App. 2000). We agree with the State that Randle's third issue is multifarious and improperly briefed. Accordingly, Randle's third issue is overruled.

### LESSER INCLUDED OFFENSES

In his fifth issue, Randle contends the trial court erred in failing to include jury charges for lesser-included offenses that were requested. Randle requested the inclusion in the jury charge of the lesser offenses of assault with bodily injury and deadly conduct.

The determination of whether a lesser-included-offense instruction requested by a defendant must be given requires a two-step analysis. *Rousseau v. State*, 855 S.W.2d 666, 672-73 (Tex. Crim. App. 1993); *Royster v. State*, 622 S.W.2d 442, 446 (Tex. Crim. App. 1981) (plurality op. on reh'g).

The first step asks whether the lesser-included offense is included within the proof necessary to establish the offense charged. *McKithan v. State*, 324 S.W.3d 582, 587 (Tex. Crim. App. 2010). We compare the statutory elements and any descriptive averments in the indictment for the greater offense with the statutory elements of the lesser offense. *Ex parte Amador*, 326 S.W.3d 202, 206 n.5 (Tex. Crim. App. 2010); *Ex parte Watson*, 306 S.W.3d 259, 263 (Tex. Crim. App. 2009); *Hall v. State*, 225 S.W.3d 524, 535-36 (Tex. Crim. App. 2007); *see also* TEX. CODE CRIM. PROC. ANN. art. 37.09 (West 2006). This step is a question of law. *Hall*, 225 S.W.3d at 535.

The second step of the lesser-included-offense analysis is to determine if there is some evidence which would permit a jury to rationally find that, if the defendant is guilty, he is guilty only of the lesser-included offense. *Rice v. State*, 333 S.W.3d 140, 145 (Tex. Crim. App. 2011); *Hall*, 225 S.W.3d at 536. The evidence must establish the lesser-included offense as "a valid rational alternative to the charged offense." *Segundo* v. State, 270 S.W.3d 79, 90-91 (Tex. Crim. App. 2008). For this step, we review all of the evidence presented at trial. *Hayward v. State*, 158 S.W.3d 476, 478-79 (Tex. Crim. App. 2005); *Rousseau*, 855 S.W.2d at 673.

### *Assault, bodily injury*

Randle asserts that assault can be a lesser included offense of aggravated assault and that the first prong of the test is satisfied. He cites only to the Court of Criminal Appeals' opinion in *Irving v. State*, 176 S.W.3d 842 (Tex. Crim. App. 2005) for support of this assertion. However, in *Irving*, after the Court conducted a comparison of the requested lesser offense of assault and of the facts required to establish the *charged* offense of aggravated assault, it concluded that "simple assault" was not a lesser included of aggravated assault as it was charged. *Id*. at 846. In this issue, Randle fails to explain or cite to any other authority as to why, in this instance, assault with bodily injury is a lesser included offense of aggravated assault by threat with a deadly weapon. Therefore, this portion of his fifth issue is improperly briefed and presents nothing for review. TEX. R. APP. P. 38.1(i).

*Deasdly Conduct*

Randle also argues that because the mental state for aggravated assault as charged in this case is intentionally and knowingly and the mental state for deadly conduct is recklessness, deadly conduct is a lesser-included offense of aggravated assault as charged. *See* TEX. CODE CRIM. PROC. ANN. art. 37.09(3) (West 2006). Assuming without deciding that deadly conduct is a lesser included offense of aggravated assault as charged in this indictment, there is no evidence that Randle acted recklessly. His own statements indicate that he intentionally took the knife when he got out of the car, wanting the deputy to either "tase" or shoot him. Thus, the only evidence before the jury is that he intended, or at least knew, that his conduct would threaten the deputy sufficiently that the deputy would have to defend himself. That Randle had run out of his prescription anti-depressant, the sudden withdrawal of which could cause mood swings and irritability, does not negate Randle's intentional or knowing action. Thus, the offense of deadly conduct is not a valid, rational alternative to the charged offense of aggravated assault, and the trial court did not err in failing to give an instruction on deadly conduct.

Randle's fifth issue is overruled.

## EXPERT TESTIMONY

In his sixth and final issue, Randle asserts that the trial court abused its discretion in excluding the testimony of Randle's expert witness. Randle proposed to call Beverly

Abney, a pharmacist, to offer testimony that the effects of Randle not taking his prescribed anti-depressant, Cymbalta, compromised his ability to form the requisite mental state of intentionally or knowingly to commit aggravated assault as charged.

A trial judge's decision on the admissibility of evidence is reviewed under an abuse of discretion standard and will not be reversed if it is within the zone of reasonable disagreement. *Tillman v. State*, 354 S.W.3d 425, 435 (Tex. Crim. App. 2011). Admission of expert testimony is governed by Rule 702 of the Texas Rules of Evidence, which states,

> If scientific, technical, or other specialized knowledge will assist the trier of fact to understand the evidence or to determine a fact in issue, a witness qualified as an expert by knowledge, skill, experience, training, or education may testify thereto in the form of an opinion or otherwise.

TEX. R. EVID. 702. For expert testimony to be admissible under this rule, the party offering the scientific expert testimony must demonstrate, by clear and convincing evidence, that such testimony "is sufficiently reliable and relevant to help the jury in reaching accurate results." *Kelly v. State*, 824 S.W.2d 568, 572 (Tex. Crim. App. 1992). In other words, the proponent must prove two prongs: (1) the testimony is based on a reliable scientific foundation, and (2) it is relevant to the issues in the case. *Tillman*, 354 S.W.3d at 435.

At a hearing outside the presence of the jury, Beverly Abney, a pharmacist, testified that it was very difficult to say whether the withdrawal of Cymbalta did or did not help "precipitate" the events with Deputy Maddox because Cymbalta is a

psychoactive medication. She further stated that there had been reports of "very significant adverse events" in withdrawing the medication, but stated she could not comment whether or not withdrawing the medication caused Randle's behavior. All she could say was that upon the abrupt withdrawal of the medication, "psychiatric events have been precipitated."

She agreed that the stoppage of any anti-depressant might increase suicidal thoughts and attempts to commit suicide, worsen depression, worsen anxiety, increase agitation, and create panic attacks. Abney had not conducted any independent study or testing of side effects, including any reports of uncontrolled behavior, from the withdrawal of anti-depressants. She had reviewed literature that the manufacturer of Cymbalta published which discussed the studies it had conducted regarding the effects of abrupt discontinuation of the medication. Her opinion was based solely on the list of possible side effects provided by the manufacturer, and any of the side effects reported were less than one percent of all cases. There were no reported cases of violence that she knew of, and she could not say that the stoppage of an anti-depressant would directly cause violence. She did agree that the longer someone was on the medication, the more likely they were to have issues when the medication is abruptly withdrawn. Irritability was reported to occur in less than one percent of all cases. When asked if anything like irritability or anxiety would cause action on dangerous impulses, Abney replied that she was not qualified to answer that question because she was not a

psychologist.

The court then questioned Abney, giving her hypotheticals which included facts specific to the offense. She was asked to assume that Randle attempted to slash a peace officer with a knife and that Randle had not taken his medication for about 24 hours prior to that incident. When asked if she could say whether Randle's actions were caused in whole or in part by the failure to take his medicine, she replied that it could have contributed to his actions. However, she limited her answer by saying she was not qualified to comment because she did not know what the medication was prescribed for. She would have to know what Randle was being treated for and what his condition was. If she knew he had a prior history that had been corrected by the medication and the medication was withdrawn, then there would be "an issue." At the conclusion of the hearing, the court excluded Abney's proposed testimony.

On appeal, Randle argues that the expert's testimony was relevant and should have been admitted. We have grave doubts as to whether this testimony is reliable as well.[6] However, assuming that it is reliable, we find the testimony to be not relevant.

Relevance is "a looser notion than reliability" and is "a simpler, more straightforward matter to establish." *Tillman v. State*, 354 S.W.3d 425, 438 (Tex. Crim. App. 2011) (quoting *Jordan v. State*, 928 S.W.2d 555). The relevance inquiry is whether

---

[6] With psychology being a "soft science" and Abney not being a psychologist, we do not believe Abney could meet the third reliability prong that the expert's testimony properly relied upon or utilized the principles involved in that field. *See Weatherred v. State*, 15 S.W.3d 540, 542 (Tex. Crim. App. 2000).

evidence "'will assist the trier of fact' and is sufficiently tied to the facts of the case." *Id.* Hence, to be relevant, the expert "must make an effort to tie pertinent facts of the case to the scientific principles which are the subject of his testimony." *Id.* Upon examining her testimony, we hold that Abney's proffered testimony is not relevant because it does not satisfy those requirements.

Abney's testimony was proffered to support the defensive theory that Randle's failure to take his medication caused Randle to threaten Deputy Maddox with a knife, thus compromising his culpable mental state to commit the offense. Abney stated many times that she was not qualified to answer the question because she did not know why the medication was prescribed for Randle and whether it was helping him. Thus, her testimony that the withdrawal of the medication compromised Randle's culpable mental state would not assist the jury because Abney could not apply the appropriate principles to the facts of the case. She simply did not have enough information.

Accordingly, the trial court did not abuse its discretion in excluding Abney's proffered testimony. Randle's final issue is overruled.

## CONCLUSION

Having overruled each of Randle's issues on appeal, we affirm the trial court's judgment.


TOM GRAY
Chief Justice

Before Chief Justice Gray,
          Justice Davis, and
          Justice Scoggins
Affirmed
Opinion delivered and filed March 21, 2013
Do not publish
[CR25]