

# IN THE COURT OF CRIMINAL APPEALS
# OF TEXAS

---
### NO. PD-0106-13
---

**CHEYENNE ESTRADA, Appellant**

**v.**

**THE STATE OF TEXAS**

---
### ON APPELLANT'S PETITION FOR DISCRETIONARY REVIEW
### FROM THE FOURTH COURT OF APPEALS
### BEXAR COUNTY
---

KEASLER, J., delivered the opinion of the Court, in which KELLER, P.J., and MEYERS, PRICE, WOMACK, HERVEY, COCHRAN, and ALCALA, JJ., joined. JOHNSON, J., concurred.

## O P I N I O N

Cheyenne Estrada pleaded nolo contendere to possession of marijuana and was placed on community supervision. On appeal, Estrada argued that a statement she made to police, acknowledging ownership of the drugs, was the product of an unwarned custodial interrogation and should have been suppressed. The Fourth Court of Appeals held that

Estrada was not in custody when she admitted ownership.[1]   We agree and affirm its decision.

**BACKGROUND**

On November 16, 2009, Officers Rodriguez and Alvarado pulled over a vehicle for failure to display a front license plate.  When Officer Rodriguez approached the driver's side window of the vehicle, he smelled the odor of burnt marijuana.  He ordered the driver, Cheyenne Estrada, and her passenger out of the vehicle.  Officer Rodriguez searched the vehicle and discovered a makeup bag under the driver's seat.  Inside the bag were three baggies of marijuana and various items of drug paraphernalia.  Rodriguez then approached Estrada and her passenger and asked them whom the drugs belonged to.  Estrada confessed that the drugs were hers and was arrested for possession of marijuana.

Estrada filed a pretrial motion to suppress her confession admitting ownership of the drugs.  She argued that she had not received *Miranda* warnings[2] prior to the officer's question regarding ownership and that she had been in custody at that time.  At the pretrial hearing, Officer Rodriguez testified that although Estrada had not been free to leave during his search of the vehicle, that fact was never communicated to Estrada.  Rodriguez testified that Estrada was arrested because she confessed to owning the drugs, the vehicle was registered in her name, and the drugs were found under the driver's seat.  The trial judge denied Estrada's motion, finding that Estrada had not been in "custody" for *Miranda*

---

[1]  *Estrada v. State*, No. 04-12-00136-CR, 2012 WL 6720655, at *8 (Tex. App.—San Antonio, Dec. 28, 2012).

[2]  *See Miranda v. Arizona*, 384 U.S. 436 (1966).

purposes when she confessed that the marijuana was hers.

On appeal, Estrada argued that the trial judge erred in denying her motion to suppress, again on the ground that she had not been provided with *Miranda* warnings before being questioned.[3] The court of appeals recognized that Estrada's claim turned on whether Officer Rodriguez's questions constituted a custodial interrogation.[4] In reaching its decision, the court compared the facts in this case to those of a number of other Texas cases where courts determined whether an individual had been in "custody" when questioned.[5] The court ultimately concluded that Estrada had not been in custody, because "the circumstances in this case do not indicate a level of coercion that would lead a reasonable person to believe they were detained to the degree associated with a formal arrest."[6]

Estrada petitioned this Court for discretionary review, and we granted review to determine whether the Fourth Court of Appeals misapplied our precedent, specifically *State v. Ortiz*,[7] in reaching its decision.

**STANDARD OF REVIEW**

---

[3] *Id.* at *2.

[4] *Id.*

[5] *Id.* at *4–6.

[6] *Id.* at *8.

[7] *State v. Ortiz*, 382 S.W.3d 367 (Tex. Crim. App. 2012).

A trial court's ruling on a motion to suppress is reviewed under a bifurcated standard.[8] We must give almost total deference to the trial judge's determination of historical facts,[9] and that same deference must be afforded to the trial judge's conclusions with respect to mixed questions of law and fact that turn on credibility and demeanor.[10] However, when a case presents only questions of the validity of a trial judge's legal rulings, appellate review is *de novo*.[11] Because the underlying facts are uncontested and the only issue in this case is whether Estrada was in "custody" when Officer Rodriguez questioned her about the ownership of the marijuana, we will apply *de novo* review.

## APPLICABLE LAW

In *Miranda v. Arizona*, the Supreme Court mandated that suspects be warned of their constitutional rights before being subjected to custodial interrogation.[12] As we stated in *Ortiz*, a routine traffic stop does not automatically place a person in custody for *Miranda* purposes, but such a stop "may escalate from a non-custodial detention into a custodial detention when formal arrest ensues or a detainee's freedom of movement is restrained to the

---

[8] *Carmouche v. State*, 10 S.W.3d 323, 327 (Tex. Crim. App. 2000); *Guzman v. State*, 955 S.W.2d 85, 89 (Tex. Crim. App. 1997).

[9] *Derichsweiler v. State*, 348 S.W.3d 906, 913 (Tex. Crim. App. 2011).

[10] *Guzman*, 955 S.W.3d at 87–89; *Ortiz*, 382 S.W.3d at 372.

[11] *Ortiz*, 382 S.W.3d at 372; *State v. Sheppard*, 271 S.W.3d 281, 291 (Tex. Crim. App. 2008).

[12] *See Miranda*, 384 U.S. at 467–70.

degree associated with a formal arrest."[13]  An assessment of whether a suspect has been detained to the degree associated with arrest is made on an *ad hoc*, case-by-case basis.[14]  In determining whether an individual was in custody, reviewing courts must determine whether, given the circumstances surrounding the interrogation, a reasonable person would have perceived detention by law enforcement officers to be a restraint on his movement comparable to the restraint of formal arrest.[15]

As further guidance to courts regarding the "reasonable person" standard in such an analysis, we stated in *Ortiz*:

> In evaluating whether a reasonable person would believe his freedom has been restrained to the degree of formal arrest, this Court looks only to the objective factors surrounding the detention.  The subjective beliefs of the detaining officer are not included in the calculation of whether a suspect is in custody. But if the officer manifests his belief to the detainee that he is a suspect, then that officer's subjective belief becomes relevant to the determination of whether a reasonable person in the detainee's position would believe he is in custody.  Conversely, any undisclosed subjective belief of the suspect that he is guilty of an offense should not be taken into consideration—the reasonable person standard presupposes an "innocent person."[16]

**ANALYSIS**

---

[13]  *Ortiz*, 382 S.W.3d at 372 (quoting *State v. Stevenson*, 958 S.W.2d 824, 828 (Tex. Crim. App. 1997)).

[14]  *Dowthitt v. State*, 931 S.W.2d 244, 255 (Tex. Crim. App. 1996) (citing *Shiflet v. State*, 732 S.W.2d 622, 629 (Tex. Crim. App. 1985)).

[15]  *Thompson v. Keohane*, 516 U.S. 99, 112 (1995); *Berkemer v. McCarty*, 468 U.S. 420, 441 (1984).

[16]  *Ortiz*, 382 S.W.3d at 372–73 (references omitted).

We now turn to the facts of this case to determine whether, at the moment that Officer Rodriguez questioned Estrada and her passenger about who owned the marijuana that he had found in the vehicle, a reasonable person would have believed that he was in custody. The undisputed facts of the case show that, at the time of the question: (1) Officer Rodriguez smelled a strong odor of marijuana coming from the vehicle; (2) Rodriguez asked Estrada and her passenger to step out of the vehicle; (3) Rodriguez searched the vehicle and found marijuana under the driver's seat; (4) Rodriguez asked both Estrada and her passenger who the marijuana belonged to. We agree with the court of appeals that these circumstances would not combine to cause a reasonable person to believe that his liberty was compromised to the degree associated with formal arrest.

In arguing that a reasonable person would have believed himself to be in custody at the time of Officer Rodriguez's question, Estrada cites primarily to the facts of *State v. Ortiz*. In *Ortiz*, we identified four main reasons why Octavio Ortiz was in custody at the time he was questioned by police: (1) officers expressed their suspicion that Ortiz possessed drugs or knew that his wife was in possession of drugs;[17] (2) Ortiz's detention had escalated beyond that of a routine traffic stop because at least two police cars and three officers were present when he made the statements;[18] (3) officers handcuffed Ortiz when a pat-down revealed

---

[17] *Id.* at 373–74.

[18] *Id.* at 374.

something illegal or dangerous on Ortiz's wife's person;[19] and (4) after Ortiz was handcuffed, officers informed him that something illegal had been found on Ortiz's wife, implicitly signaling that Ortiz was now under detention for something more serious than a speeding infraction.[20] We held that these circumstances combined to support the conclusion that a reasonable person in Ortiz's position would have believed he was in custody when he was questioned by the police.[21] Here, Estrada cites several of these circumstances in *Ortiz* and attempts to relate them to the facts of this case.

## A. OVERT COMMUNICATION OF SUSPICION

The first circumstance that Estrada says was present in this case is that police made overt statements revealing a belief that the detainee was involved in criminal activity. Estrada argues that just as officers in *Ortiz* communicated their suspicions to Ortiz that he was engaged in illegal activity, when Officer Rodriguez ordered Estrada out of the car and asked her whom the marijuana belonged to, his actions revealed his suspicion that Estrada had committed a crime.

We agree with Estrada that a reasonable person in her position would have recognized that Officer Rodriguez suspected her, to some degree, of being engaged in criminal activity. Rodriguez asked Estrada and her passenger whom the drugs belonged to, indicating a

---

[19] *Id.* at 374–75.

[20] *Id.* at 375.

[21] *Id.*

suspicion that one or perhaps both of them had committed an offense. Likewise, Estrada correctly points out that the officer's announcement that he had discovered marijuana in the vehicle could have placed her in apprehension of arrest, because it might have been presumed that, as the driver and registered owner of the vehicle, she had possession and control over its contents.[22]

However, while communicated suspicion by an officer to a detainee was present in this case to some degree, it does not approach the overtly communicated suspicion present in *Ortiz*. In that case, the detaining officer asked Ortiz point-blank: "What kind of drugs does [your wife] have?" and "How much drugs are in the car?"[23] We indicated that "[t]his question, by its very nature, conveyed to the appellee [the officer's] presupposition that the appellee was aware that his wife possessed drugs and that the appellee knew what kind of drugs she possessed."[24]

Conversely in this case, Officer Rodriguez's question regarding ownership was directed at both Estrada and her passenger. As the court of appeals pointed out,[25] this general inquiry is not as coercive and accusatory as the statements made by officers in *Ortiz*, which

---

[22] *See, e.g.*, *King v. State*, 895 S.W.2d 701, 703 (Tex. Crim. App. 1995) (defining possession as exercising "actual care, control and management over the contraband").

[23] *Id.* at 373–74.

[24] *Id.* at 374.

[25] *Estrada*, 2012 WL 6720655, at *6.

were made to Ortiz directly while he was physically separated from other suspects.[26] Here, Rodriguez was attempting to gather information and ascertain which of the two detainees should be held responsible for possession of narcotics. We do not believe that Officer Rodriguez's general expression of suspicion to both Estrada and her passenger provides "substantial support" for a conclusion that a reasonable person in Estrada's position would have believed that she was in custody when she confessed ownership of the marijuana.[27]

## B. RESTRAINT

Estrada's second argument is that the court of appeals over-emphasized handcuffing as an element of custody. In *Ortiz*, both detainees were handcuffed,[28] but in this case Officer Rodriguez did not place either Estrada or her passenger in handcuffs. The court of appeals mentioned this difference as an element of custody that was present in *Ortiz* but not in the case at hand.[29] Estrada claims that in *Ortiz*, the fact that the detainees were handcuffed became an element of custody because it signaled to Ortiz the detaining officer's suspicion that Ortiz was involved in illegal activity. But here, she argues, the lack of handcuffing should not be considered because handcuffing was not needed to signal Rodriguez's

---

[26] *Ortiz*, 382 S.W.3d at 373–74.

[27] *See id.* at 374 (holding that officers' "overt attitude concerning the appellee's likely complicity, because it would have been readily apparent to the appellee," provided "substantial support" for a finding that Ortiz had been in custody).

[28] *Id.* at 374–75.

[29] *Estrada*, 2012 WL 6720655, at *6.

suspicion of complicity—that was conveyed through his search of the vehicle and his question about ownership of the drugs.

The court of appeals was correct in finding that handcuffing was an indicium of custody present in *Ortiz* but not present in this case. Failing to consider restraint as a factor would undermine the requirement that a determination of custody should be made by looking at the totality of the circumstances.[30] In *Ortiz*, we stated that handcuffing is "one [factor in] a range of relevant factors" used to make a custody finding.[31] In that case, not only was Ortiz handcuffed, he was handcuffed immediately after something allegedly illegal was discovered on Ortiz's wife's person, conveying to Ortiz the detaining officer's belief that Ortiz was associated with the illicit behavior.[32] We held that this circumstance "lends additional support" to the conclusion that a reasonable person in Ortiz's position would have considered himself in custody.[33]

None of our reasoning regarding handcuffing in *Ortiz* can be applied to this case. Estrada and her passenger were not handcuffed. And there is certainly no link here between the physical restraint of a detainee and an officer's overtly communicated suspicion of illegal

---

[30] *See Stansbury v. California*, 511 U.S. 318, 323 (1994) (a determination of custody turns on the objective circumstances surrounding the interrogation).

[31] *Ortiz*, 382 S.W.3d at 374.

[32] *Id.* at 374–75 (immediately after contraband was discovered on Ortiz's wife, the detaining officer said, "Yep. Turn around. Put your hands behind your back.").

[33] *Id.* at 375.

activity. The court of appeals was correct in finding that the lack of physical restraint supported a conclusion that Estrada was not in custody when Rodriguez asked her about ownership of the drugs.

### C. COERCIVE NATURE OF THE STOP

Estrada's third argument centers on the number of officers present at the scene. In *Ortiz*, two police vehicles and at least three officers were present when Ortiz was first questioned.[34] The detaining officer in that case had called for backup so that a female officer could pat down Ortiz's wife.[35] In this case, only one police car and two officers were present. Estrada argues that the court of appeals erred when it found that fewer police vehicles and fewer officers were elements that weighed against a finding of custody. Indeed, Estrada argues that the situation she faced was more coercive than that in *Ortiz*, not less.

We are unpersuaded by Estrada's reasoning. While we did indicate in *Ortiz* that the number of vehicles and officers present only contributed "marginally" to a custody determination,[36] the court of appeals did not err in taking such circumstances into account. We stated in *Ortiz* that "[a]n ordinary traffic stop usually involves a single police car and one or two officers," precisely the number of vehicles and officers present in this case. As the court of appeals held, the "ordinary" number of vehicles and officers being present weighs

---

[34] *Id.* at 374.

[35] *Id.* at 370 n. 8.

[36] *Id.* at 374.

against a custody finding.

Estrada also says that her detention was more coercive that Ortiz's because she was "ordered" instead of "asked" to step out of her vehicle, and she was "told" what illegal substance had been found in the vehicle rather instead of being "asked" what would be found in the vehicle.[37] These arguments are without merit. In *Ortiz*, the detainees were separated and questioned by different officers; Ortiz was accused individually and directly about the presence of drugs in the vehicle; Ortiz was handcuffed after something was found on his wife's person; and Ortiz was directly accused of being complicit with his wife in transporting drugs.[38] None of these coercive circumstances were present in this case, and it strains credulity for Estrada to claim that her detention was "more coercive" than Ortiz's.

## D. *BERKEMER V. McCARTY*

Estrada also claims that *Berkemer v. McCarty*[39] mandates a custody finding in this case. First, Estrada states that "[a]ccording to *Berkemer*, at the time Officer Rodriguez posed his question to Ms. Estrada, this encounter was no longer an investigative detention" because the only purpose of his question was to obtain an incriminating response. *Berkemer* does not stand for such a proposition. In *Berkemer*, the Court indicated that a non-custodial, investigative detention will typically involve "a moderate number of questions to determine

---

[37] *Id.* at 369, 370 (Ortiz and his wife were "asked" to step out of the car; the detaining officer asked Ortiz "point-blank" "How much drugs are in the car?").

[38] *Id.* at 370.

[39] 468 U.S. 420 (1984).

his identity and to try to obtain information confirming or dispelling the officer's suspicions."[40] This statement does not limit questions asked during an investigative detention to non-incriminating ones. The fact that an officer is authorized to ask questions for the purpose of confirming or dispelling his suspicions assumes that such questions could be potentially incriminating.[41] Ultimately, the Supreme Court in *Berkemer* stated that a determination of custody turns on whether a detainee's freedom is curtailed to a degree associated with formal arrest,[42] the test this Court and the court of appeals have applied to this case.

Estrada also argues that the question asked by Officer Rodriguez was impermissible because it contained an essential element of the suspected offense. She cites *Berkemer* to support her theory that questions that contain elements of an offense assume special significance in making a custody determination. However, in *Berkemer*, the Supreme Court acknowledged that a question asked by police of an arrestee contained an element of an offense only in order to distinguish it from a different question asked on a separate occasion

---

[40] *Id.* at 439.

[41] *See Minnesota v. Murphy*, 465 U.S. 420, 429–30 (1984); *Oregon v. Mathiason*, 429 U.S. 492, 495 (1977) (finding that although police-citizen interactions may have a coercive aspect because law enforcement is investigating the possibility of criminal activity, *Miranda* warnings are required only when restriction on an individual's freedom renders him "in custody.").

[42] *Berkemer*, 468 U.S. at 439 (citing *California v. Beheler*, 463 U.S. 1121, 1125 (1983) (per curiam)).

for purposes of a harm analysis.[43] The Supreme Court did not identify "questions that contain elements of an offense" as circumstances indicative of custodial arrest, and we likewise decline to do so. It is true that Rodriguez's question to Estrada was potentially incriminating, and that an answer might amount to a confession. However, as we indicated above, police are free to ask potentially incriminating questions during non-custodial interrogation. The fact that a question contains an element of a criminal offense bears no independent significance on a custody determination beyond the officer's suspicion communicated to the detainee by the nature of the question itself, which we have already taken into account.

## APPLICATION AND CONCLUSION

In the end, Estrada can identify only one circumstance that might lead a reasonable person to consider himself in custody for *Miranda* purposes: the fact that Officer Rodriguez asked Estrada and her passenger whom the drugs belonged to. Every other factor identified by this Court and the court of appeals—that Estrada was not handcuffed; that she was not subjected to a pat-down; that the "ordinary" number of police vehicles and officers were present during her detention; that she was not informed that she was not free to leave; and that she was not separated from her passenger and interrogated individually—indicate that the stop was a simple investigative detention and never rose to the level where a reasonable person would consider himself in custody. Other circumstances that Estrada mentions in her

---

[43] *Id.* at 443–44.

brief—for example, that Officer Rodriguez ordered her to exit the vehicle and then searched the vehicle—are likewise not indicative of custody and are procedures that routinely occur when an officer detects an odor of marijuana inside a vehicle.[44]

Because no other circumstances are indicative of custody, we decline to hold that a single incriminating question, directed at multiple individuals who might have had access to the drugs at issue, is sufficient to establish that a "reasonable person would perceive the detention to be a restraint on his movement comparable to formal arrest."[45] Estrada was not in custody for *Miranda* purposes when she responded that she was the owner of the marijuana. The judgment of the court of appeals is affirmed.


DATE DELIVERED: March 12, 2014

DO NOT PUBLISH

---

[44] *Moulden v. State*, 576 S.W.2d 817, 819 (Tex. Crim. App. 1978) (upholding the warrantless search of an automobile and investigative detention of the vehicle's passengers based on the odor of marijuana officers smelled at the time they stopped the vehicle).

[45] *Ortiz*, 382 S.W.3d at 372 (ellipsis omitted).